:STATE OF MINNESOTA ex rel. CITY OF DULUTH v. DISTRICT COURT
OF ST. LOUIS COUNTY.[1]

July 3, 1895.

Nos. 9348–9349—(72–73).

·Constitution—Local Improvement.

That part of Laws 1891, c. 146, subc. 9 (G. S. 1894, §§ 1337–1353), which
provides for the levying of assessments for local improvements is not
in conflict with the state constitution, on the ground that it authorizes
the assessments to be made upon the property fronting upon the im-
provement.

;Same—General Law.

Statutes which, on a proper basis, divide municipal corporations into
classes according to population, and legislation adapted to the differ-
ent classes, are general in their nature, and are not a breach of a con-
stitutional prohibition against the enactment of special laws; and the
mere fact that at the time of the passage of such a statute there is but
one, or a limited number of municipalities, having the population speci-
fied in the act, does not, of itself, render it unconstitutional.

Local Improvement—Acquiescence in Assessment.

After the work required to be done in making certain local improve-
ments in the village of West Duluth had been placed under contract,
the village council proceeded to make and levy the partial assessment
provided for by Laws 1891, c. 146, subc. 9, § 5 (G. S. 1894, § 1341), pre-
scribing the territory benefited, and the basis for the assessment. On
the completion of the work the council levied the final assessment au-
thorized by the same section, covering the same territory, and on the
same basis, but proportionally. *Held*, that property holders who had
acquiesced in and sanctioned the first assessment, by failing to object
to its justness and validity, could not be allowed to oppose and con-
test the final assessment on grounds which would have been available
when the first assessment was made.

·Constitution—Uniform Taxation.

*Held*, that the constitutional rule requiring uniformity of taxation
is not violated by that part of Laws 1891, c. 146, subc. 9, § 5 (G. S. 1894,
§ 1341), which authorizes and requires a partial assessment based on
the estimated cost.

Proceedings were commenced by the village of West Duluth un-
der Laws 1891, c. 146, subc. 9, for the purpose of making certain

[1] Reported in 64 N. W. 190.

street improvements. After letting the contract an assessment of 85 per cent. of the estimated cost of $108,000 was made. After the work was finished, it was found that there was a deficiency in the cost of $48,277.97 over the first assessment, and a second assessment was levied to pay such deficiency. From the confirmation of the latter assessment Martha H. Norton, as executrix, and others, and also Northwestern Loan and Investment Company appealed to the district court of St. Louis county. Both appeals were tried together before Moer, J., who made an order setting aside and cancelling the assessment as to the property of appellants, and judgment was entered accordingly. Between the dates of the confirmation of the assessment and of the judgment, the village of West Duluth became part of the city of Duluth, and the city of Duluth sued out writs of certiorari. Reversed.

*H. H. Phelps*, for relator.

*Carey, Agatin & Carey*, for respondents.

COLLINS, J. For the purpose of making certain street improvements in the village of West Duluth in the year 1891, steps were taken by the village council, in accordance with the provisions of Laws 1891, c. 146, subc. 9 (G. S. 1894, §§ 1337–1353). The cost of the proposed improvements was estimated at $108,000 by the village engineer, and after the work had been placed under contract the council proceeded to make an assessment of 85 per cent. of the estimate, as required by the terms of Laws 1891, c. 146, subc. 9, § 5 (G. S. 1894, § 1341). After the completion of the work, which cost much more than was estimated, the council made a final assessment, authorized by the last paragraph of said section 5, and these proceedings grew out of such assessment, and its confirmation by the council, in the year 1893. On appeals to the district court from the assessment, as made and confirmed by the council, taken by two aggrieved property holders, a trial was had which resulted in findings of fact on which were based conclusions of law directing entries of judgment setting aside and vacating the assessment and confirmation, in so far as it related to appellants' property, upon the ground of irregularity and illegality, and judgments were so entered. January 1, 1894, the village became a part of the city of Duluth, the relator in these proceedings in certiorari.

From the return it appears that upon the completion of the work, and an ascertainment of the amount needed to meet the deficiency, the village council proceeded to make a final assessment. A resolution was adopted, reciting the facts, and stating the balance required to pay in full for the improvement, and then ordering, making, and levying a final assessment of the exact amount of this balance "against all of the property * * * which was assessed in the former assessment for said improvement in the same proportion as said former assessment was made." The former assessment referred to was that of 85 per cent., heretofore mentioned; and the final assessment was ordered and levied in the same manner and on the same basis as the first, but, of course, proportionally.

In the same resolution the village assessor was directed to make the assessment roll provided for and prescribed in said subchapter 9, § 7 (G. S. 1894, § 1343), and to return it, when prepared, to the council. When so prepared and returned, it was filed with the village recorder; and it was resolved by the council that, as filed, it be adopted as the assessment roll for the assessment, and that the respective sums therein designated be levied and assessed against the respective pieces of property therein described, all of which property the council found and determined to have been and to be benefited by the improvement, in the sums assessed against the same, as well as the sums theretofore assessed. It was also resolved that the roll be published, together with a notice of the time when and the place where the village council would meet to review and confirm such assessment, and the roll and the notice were duly and legally published.

At the time and place fixed by the notice the council met, and the appellants duly objected to the confirmation of the assessment for a number of reasons, some of which were abandoned on the trial below. These objections were disregarded, and a resolution introduced and passed containing all necessary recitals, and, among others, that at the present meeting the council had duly reviewed and considered the assessment, had heard all objections to the same, and had been fully advised in the premises. Therefore it was resolved and ordered that the assessment so made and published be, and it was, in all respects, ratified and confirmed. By law (section 7, supra), this confirmatory order is made final, except when an

appeal is taken to the district court, and there, upon trial, the original roll and resolution confirming the assessment, or duly-certified copies, are prima facie evidence of the facts therein stated, and that the assessment was regular and just, and made in conformity with the law (subchapter 9, supra, § 14; G. S. 1894, § 1350).

The court below found, as facts, the exact manner in which the assessor prepared the assessment roll in question; that he ascertained the amount to be assessed against each lot by a process of division, and apportioned the same in proportion to the frontage or area; that the assessment was made without reference to how the lots were affected by the improvement, and without regard to benefits conferred thereon. It also found that the several lots were differently and variously affected by the improvement. It also found that many of the lots along the streets on which the improvement was made were above the street grade, some below, some were upon high rocky elevations, and others in deep depressions. There was no finding that by reason of these irregularities of surface the property here in question, belonging to appellants, was either injured or benefited by an assessment based on frontage or area.

There was no finding as to whether the assessor had obeyed the order of the council under which he prepared the assessment roll, namely, to assess and apportion on the same basis and in the same way as had been adopted and pursued when the first assessment was made and apportionment had; but this was unnecessary, as it stood admitted on the trial that in making out the final assessment roll the assessor covered the same territory, followed the same plan and method, and adopted the same basis. He assessed and apportioned in the same manner, but proportionally, the total amount required being less than the amount of the first assessment. Even if this admission had not been made, counsel for appellants made no attempt to show that this final assessment was not upon the same property covered by the earlier, and upon exactly the same basis. In fact, it could not well be upon any other property, or upon any other basis, without gross error and injustice.

As to this earlier assessment, it was not shown that appellants complained of or objected to it. On the other hand, it appears that they acquiesced. They had no complaint to make, and we

are obliged to hold that they were bound by it when the final assessment came to be made. As to the property affected, and as to the basis on which the assessment was to be made, the question was res judicata when the first assessment was made and confirmed, and no appeal taken from the confirmatory order, so far as appellants were concerned,—for it had been determined what property had been affected or benefited by the improvement, to what extent, and how, the cost of the improvement should be apportioned and assessed. On these important matters the appellants were concluded by failing to file their objections when the question first came before the council for consideration, or, if they did file objections which were overruled by the council, by neglecting to appeal as prescribed by statute. Instead of their objecting to the apportionment and assessment, it appears that they sanctioned and acquiesced in it fully; for in the notices of appeal herein it was expressly stated that their property had been included in the first assessment, had been assessed, and remained liable for the amount of such assessments.

The village council having, then, and for the purposes of this first assessment, prescribed the territory benefited by the improvement, and therefore subject to an assessment for its cost, and having also determined the basis upon which the assessment should be made, and having, in accordance therewith, actually apportioned and assessed a percentage of the estimated cost, was bound by its acts when it came to make the final assessment. It could not then change the boundaries of the assessable district, or, without having been directed so to do by an appellate tribunal, adopt another basis for determining how, and on what basis, the benefits should be apportioned and the cost assessed. If the council was concluded by its acts in this matter, it should follow that the property holders, who had previously admitted the justice and validity of the action of the council, should also be concluded. Really, there was an application of this rule of conclusiveness in State v. District Court, 40 Minn. 5, 41 N. W. 235.

It is contended that so much of subchapter 9, § 5 (section 1341) supra, as authorizes and requires an assessment of 75 per cent. of the estimated cost of the improvement, and, in addition thereto, 10 per cent. of such estimate for the purpose of defraying neces-

sary expenses,—in all, 85 per cent. of the estimated cost,—is unconstitutional, because in violation of the constitutional rule of equality of taxation. This assessment is made after the work has been placed under contract, and the argument of counsel proceeds on the assumption that this assessment is based wholly on the engineer's estimate—section 4 (section 1340)—of the cost, and without regard to the contract price,—an arbitrary estimate, which may be very much more than the actual cost, as indicated by the contract.

Unquestionably, it is within the power of the legislature to authorize an assessment to meet and defray the cost and expense of a local improvement, including incidental expenses, before the work is completed. How this shall be done—that is, upon what estimate or foundation—must, inevitably, be a matter for the exercise of legislative discretion; for there is no possible way in which the exact cost can be determined in advance of the performance of the work. It is not improbable that, taking the engineer's estimate as a guide, the assessment might be for an amount in excess of the contract price, with a reasonable sum added to cover the incidentals, and thus property owners held liable for the payment of money not needed, but it is not to be presumed that the estimate will exceed the contract price. The presumption is the other way, and that the engineer will closely approximate the actual cost. That it might be too high, and that the first assessment might be sufficient to pay in full for the work, is provided for in that part of the law which declares that a final assessment shall not be made, unless necessary. But if an excessive assessment and levy should be made, and a larger sum of money collected than required, inequality of taxation would not result, unless the surplus was withheld from the true owners,—those who paid it,—and appropriated to some foreign purpose. The statute contemplates that a separate and distinct account of each street improvement shall be kept by the authorities, and, with this done, it would be an easy matter for the village council to adjust and return any overplus or excess. No express statutory provision authorizing such action would be essential.

It is also argued that the village act of 1891 is in conflict with subdivisions 7 and 9 of section 33 of article 4 of the constitution, as amended in 1881, and also in conflict with the provisions of the same article, section 34, because made to apply solely to villages hav-

ing over 3,000 inhabitants, the fact being that West Duluth was the only village to which its provisions were applicable at the time of its enactment.    But on this point the law, as laid down in a large number of cited cases, is well stated in 15 Am. & Eng. Enc. Law, p. 981, in the following language: "A statute which divides municipal corporations into classes according to population, and legislation adapted to the different classes, are now generally conceded to be general in their nature, and not a breach of the constitutional prohibition against the enactment of special laws." Of course, the division must be on a proper basis.    The mere fact that at the time of the passage of such a statute there is but one, or but a limited number of municipalities, having the population specified in the act, does not, of itself, render it unconstitutional.

Counsel for appellants, in support of their contention, quote an expression found in State v. Cooley, 56 Minn. 540, 58 N. W. 150, in the opinion written after reargument: "Examples of acts obnoxious to this rule are laws classifying cities on the basis of present population." The word "present," in that sentence, was used advisedly; for we had in mind such legislative enactments as only affected municipalities having the designated number of inhabitants at the time of the enactments, and not to those which were applicable whenever a municipality acquired the designated number, and, through increase of population, came within the provisions of the law.

The contention is also made that such portion of said subchapter 9 as provides for the levying of an assessment for local improvements—section 1 (section 1337)—is unconstitutional and void because it authorizes assessments upon the property fronting on the improvement,—an alleged arbitrary assessment without regard to benefits.    We need not discuss this point, for the validity of local assessments apportioned according to benefits ascertained or benefits implied, according to frontage, or some other such fixed standard, was affirmed by this court in State v. Reis, 38 Minn. 371, 38 N. W. 97.

We have discussed all of the questions which we regard as worthy of special consideration.

The judgments appealed from are reversed, and the causes remanded to the district court for further action.