## BOARD OF MAYOR & ALDERMEN, TOWN OF ERWIN v. W. P. SIMPSON.

Eastern Section.  December 3, 1927.

Petition for Certiorari denied by Supreme Court, May 26, 1928.

J. G. Bare and Burrow & Burrow, of Bristol, for complainant.
Divine & Guinn, of Johnson City, for defendant.

PORTRUM, J.  This suit was filed by the authorities of the Town of Erwin for the purpose of collecting certain street improvement assessments, due and unpaid, from W. P. Simpson.  The bill alleges that the town authorities, at the instance of the defendant and others, created and established an Improvement District under authority of

the abutting property law, being chapter 349 of the Private Acts of 1915, which chapter was amended so as to apply to Erwin, Tennessee, by chapter 264, Acts 1921. And that the defendant W. P. Simpson, with others, filed a petition, asking the creation and establishment of District No. 3, the petition containing the following language:

"We, the undersigned owners of more than fifty-one per cent. of the frontage of the lots or parcels of land abutting on both sides of Opkesika street as lies between Carolina and Clinchfield avenues; so much of Clinchfield avenue as lies between Opkesika street and Love street; so much of Catawba street as lies between Vinton street and Carolina avenue; so much of Tucker street as lies between Elm street and Willow street; so much of Park street as lies between Elm and Willow streets; and so much of Third street as lies between Main street and Elm street, in the Town of Erwin, Tennessee, hereby petition and request of your Honorable Board of Mayor and Aldermen to pave and otherwise improve said streets hereinabove set forth, in front of each of our said properties, constituting the same Improvement District No. 3, and each of the undersigned for himself or herself represents and avers that he or she is the owner in fee simple of the property hereinafter described as belonging to him.

"Said work hereby petitioned for, and for which the undersigned property owners desire to be done on said streets shall be done under the provisions of chapter 349 of the Acts of the General Assembly of the State of Tennessee of 1915, and Amendatory Act of March 11, 1921.

"The work to be done or the improvements petitioned for shall consist of the following:

"First: All necessary grading.

"Second: All necessary drainage or storm sewers.

"Third: Concrete curbing where necessary.

"Fourth: Street paving, either bithulinic, vitrified brick, asphalt, concrete, or other equally as good material, the kind of paving to be determined later."

It is seen from this petition that the district sought to be created is composed of several disconnected streets, and it is shown in the proof that some of these streets are as much as two blocks away from others, and others are as much as twelve blocks away.

Acting upon this petition the town passed the necessary ordinances creating the improvement district, and designating it as No. 3, and under these ordinances the improvements were made and the assessments levied. The amounts due from the abutting property owners were listed against the property and made payable in ten annual installments. The first two of these installments levied under improvement District No. 3 had matured and been paid by the defendant prior to the controversy in this cause. But on the maturity of the

third installment the defendant declined and refused to pay the installment as made.

The defendant admits that the town created the improvement District No. 3 at his instance, he being one of the signers of the petition requesting the improvement, but he avers that he is not liable for the full sum assessed against him because the city charged and assessed against his property an item which should have been assessed, first, against the town, or if the town was not liable for this item, second, the item should have been charged against the whole improvement district; that is the twelve or more streets, or the property abutting on the twelve or more streets and not against the property abutting only on Third street. This item represents the cost of the storm sewer running along Third street for a distance of about 350 feet, which is the entire distance of Third street; it amounts to $137.40. The total assessment against the property of Simpson, unpaid, is $894.13, which includes the cost of the storm sewer, and the litigation is over the cost of the storm sewer, for the defendant tendered the balance of the assessment after deducting the cost of the sewer.

So the defendant by his answer seeks to go behind the assessment as made by the town board and correct the original assessment by deducting his cost of the sewer and charging it to the town, or, as is insisted in the brief, a re-assessment of the whole improvement in order to correct and relieve him of the payment of the greater part of $137.40. It is stated that improvement district is composed of many streets that are not adjacent, and that Third street is not connected with any other street in the improvement district. And the town board erred in a matter of calculation, which is apparent upon the record, when it charged the whole of the cost of the storm sewer laid on Third street to the property owners abutting on Third street. And the court, the error being apparent, and unauthorized under the act, will correct it by ordering a reassessment of the whole improvement district.

The Chancellor declined to go behind the assessment for the reason he held the defendant Simpson was estopped to question the assessment at a time different from the time fixed in the act, and after the work had been completed and two installments of the assessment paid. If the Chancellor was correct in this position, then it is not necessary for this court to determine whether or not the city could charge the property on one disconnected street with the improvements on that street, when that street was a part of a general improvement comprising several streets. We might add, however, that many of these streets were charged with improvements local to the street charged. It may be that many of the property owners have been assessed on an equal basis with the defendant by reason of the fact that each street is charged with the improvements not common to all streets, such as rain sewers. While it was claimed in the lower court

the town was first liable for the cost of the rain sewer, it is not insisted in this court that this item should be charged to the town and not to the improvement district. This is not tenable in any event, because section 15 of chapter 349, Private Acts 1915, provides for what the town shall be liable, and rain sewers are not included, or sewers of any character.

Under this law the abutting property owners pay two-thirds of the cost of the improvements of the street, exclusive of the intersections, the town paying the cost of intersections, and the property owners the total cost of sidewalks, curbing and lateral sewers.

The improvement is initiated by a petition signed by fifty-one per cent. of the abutting property owners, which is lodged with the Board of Mayor and Aldermen, and the board is required to institute the improvement under the act, unless the signatures of the signers are not genuine, the petition was prepared by a bidder, the cost of the proposed improvements will be greater than will be justified by the public necessity and the cost chargeable upon abutting property will be so out of proportion to the value of such property as to be unjust to the owners who are not signers. (Section 3.)

So it is the duty of the board to order the improvement, unless it can be rejected for one of the above stated four reasons. The defendant in this case initiated the improvement, and since the board enacted the ordinances authorizing it, we must conclude the board was not justified in rejecting the proposal for any of the reasons stated in the act, and, therefore, it was imperative upon the board to establish the improvement district.

It was then the duty of the defendant to comply with the act, so far as his property and he were concerned, and the act provides for a notice to the public, published in a newspaper containing the following, ''And all the parties interested have been given an opportunity to be heard. It is, therefore, ordered that the Improvement District No.——— . . . shall be (improved) in accordance with the provisions of Chapter——— of the Acts of the General Assembly of the State of Tennessee, 1915.''

''After the adoption and promulgation of the ordinance it is made the duty of the Mayor and Aldermen to cause to be prepared accurate maps, plans, specifications for the kind of paving, or other improvements determined upon, and shall advertise for bids by weekly publications of notices of the time and place of the opening of the bids.'' (Section 12.)

''That when said Board of Mayor and Aldermen shall have awarded the contract or contracts . . . it shall then cause to be made an accurate estimate of the cost of the proposed work, which cost shall also include the cost of maps and surveys, legal service connected therewith, and cost of superintending cost of said improvement, if any.

"The said Board of Mayor and Aldermen shall then give notice to all parties interested by one publication in a newspaper published in said town at least five days before the time fixed, and also by a like notice posted at the town hall and on the front door of the building or hall in which said board holds its regular meeting of the time when it will make the necessary assessments upon abutting property and apportion the same among the various abutting lots." (Section 14.)

"That at the time fixed in said notice, or at some time to which the board may then adjourn, all parties interested who so desire shall be heard, and said assessment and apportionment shall then be made; but the said Board of Mayor and Aldermen may adjourn the meeting here provided for from day to day until the final determination is arrived at by said body." (Section 15.)

The Act provides the assessment may be substantially in the following form:

"Special assessment for Improvement District No.—— in the town of ———— in the county of ————, State of Tennessee, made on ———— day of ————, 19——, Board of Mayor and Aldermen of the town aforesaid having given notice to all parties interested by the publication as required by law, in the ————, a newspaper published in said town, on the ———— day of ————, 19——, and after giving to all such parties so desiring an opportunity to be heard, hereby charges and assesses upon each lot abutting upon Improvement District ———— . . . the following sums for each foot thereof abutting on said Improvement District . . ." (Section 15.)

It is shown that all the provisions of the act were complied with, the publications were made, and the defendant had opportunity to appear and contest this assessment at the time the Mayor and Aldermen met to entertain his protest. He then remained silent and the town authorities proceeded to carry out the subsequent provisions of the law, let the contract and make the improvements. The record shows that in making the assessment certain streets were charged with sewers placed within those streets, and had the defendant desired to contest the method of assessment, it was his duty to appear and contest it by the method provided in the act. Especially so since he was one of the signers of the petition which initiated the improvement. He now seeks by court action to upset the whole financial arrangement and reassess the whole improvements in order to relieve himself of the small sum of $137.40, and he admits that he expects to pay part of this sum. It is averred that other abutting property owners refused to pay their assessments, which aggregate from $30,000 to $50,000, awaiting the success of this defendant in upsetting the assessment.

We think that the defendant by his conduct, his failure to protest when he was given the opportunity to protest, estops him from thereafter questioning the regularity of the assessment.

The general rule is that such conduct should, and does, estop one in like place.

"Objections to an assessment are deemed to be waived if not presented at the time and in the manner prescribed by law." 28 Cyc. 1174.

"The failure of a property owner duly notified of proposed improvement proceedings to avail himself of the opportunity to remonstrate to the local authorities whose duty it is to pass upon the same, will preclude him in a subsequent proceeding from insisting that his property was wrongfully assessed for a portion of the cost, upon the ground that it received no benefits from the improvement. And if the property owner sees and knows that the work is being done, and makes no objection while the work is being done, he cannot, after the work is finished·and has been accepted by the city as having been done according to contract, object that the material used and work done were not strictly in accordance with the contract. To work an estoppel, however, there must have been notice to the property owner of an intention to tax his property for a portion of the cost of the improvement, and an opportunity to present objections thereto." 10 R. C. L. 723.

"An assessment for a local improvement is valid, notwithstanding errors and irregularities in the method adopted for apportioning it, or even an unauthorized method, if the owner of the property charged, having full and fair opportunity to do so, does not object to the assessment." State ex rel. Duluth v. District Ct., 61 Minn., 542, 64 N. W. 190.

"A land owner who has petitioned for the re-paving a city street in front of his land, when the municipal charter confers upon the city power to do such work at the cost of the abutting owners, apportioned among them according to frontage, and the city has no other power, has waived his right to object to an assessment upon his property laid according to that rule, even if the method is contrary to the provisions of the constitution." Conde v. Schenectady, 164 N. Y. 258, 58 N. E. 130.

"Although a statute, in requiring a municipal council to find affirmatively that the benefits conferred upon assessed property by a local improvement are equal and uniform throughout in respect to all the property assessed, is mandatory in order that an assessment according to the foot frontage be valid, nevertheless an assessed property owner, who is given by the statute an opportunity to be heard upon the question of benefits to his property and to obtain a modification of the assessment made thereon, and who neglects to avail himself of that opportunity, cannot afterwards maintain an action to enjoin the collection of the assessment." Morse v. Omaha, 67 Neb. 426, 93 N. W. 734.

We conclude that there is no error in the decree of the lower court and it is affirmed at the cost of the appellant and the sureties on his appeal bond. The case is remanded to carry out the order of sale in case the appellant or his sureties do not pay the judgment into court within sixty days, and an execution may also issue upon demand.

Snodgrass and Thompson, JJ., concur.