## IN RE COLLECTION OF PERSONAL PROPERTY TAXES FOR 1922.
## STATE v. CLOUDY & TRAVERSE.[1]

April 25, 1924.

No. 23,821.

**Act of 1921 for county school tax levy constitutional.**

Laws 1921, c. 357, providing for county school tax levies in certain counties, the classification being based on area and assessed valuation, the proceeds of the levies to be distributed among the districts producing less than a stated per pupil revenue, is not unconstitutional as special legislation.

John Cloudy and J. L. Travers filed objections in the district court for St. Louis county in the matter of proceedings to enforce collection of personal property taxes for the year 1922, assessed against Cloudy & Traverse. The matter was heard by Fesler, J., who granted plaintiff's motion for judgment in favor of the state. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

*Baldwin, Baldwin, Holmes & Mayall,* for appellants.

*Charles E. Adams,* special attorney for respondent.

*Alfred L. Thwing,* by consent, filed a brief for certain independent school districts in St. Louis county.

[1]Reported in 198 N. W. 457.

DIBELL, J.

Judgment was entered in St. Louis county against the defendants for personal property taxes. They appeal from the judgment. Their objection is that it includes an 8/10 mill tax levy for school purposes pursuant to Laws 1921, p. 537, c. 357, entitled "An act to provide for county school tax levies in certain counties and for the apportionment and distribution of the same." The ground of their objection is that the statute is unconstitutional as special legislation.

The Constitution provides that the legislature shall pass no special law "regulating the management of public schools, the building or repairing of schoolhouses and the raising of money for such purposes." Const. art. 4, § 33. Sections 1 and 2 of the statute imposing the 8/10 mill tax are:

"In every county in this state in which the assessed valuation of real and personal property, exclusive of moneys and credits, exceeds two hundred and fifty million dollars ($250,000,000) and the total territory of each such counties exceeds five thousand square miles (5,000), the County Auditor shall annually on or before the 10th day of October make a special county school tax levy not to exceed eight tenths of one mill upon all taxable property in the county which tax and the proceeds thereof shall be apportioned by the County Auditor of each such counties among the school districts of the county as follows:

"In each common, independent, special and unorganized school district in said counties in which a tax levy of thirty (30) mills does not bring a revenue equal to ninety dollars ($90.00) per pupil, the County Auditor shall apportion to such districts an amount equal to the difference between what a thirty (30) mill tax levy brings per pupil and the amount of ninety ($90.00) dollars per pupil; provided, that where the tax levied under Section 1 of this act does not in any tax-year produce a sum sufficient to pay the per pupil allowance of ninety ($90.00) dollars in full, then the Auditor shall for that year automatically reduce the maximum of ninety dollars per pupil to an amount that will allow all obligations to be paid

in full, and the amount so paid shall be the full amount to be paid any school district under this act for that year."

The Constitution enjoins upon the legislature the establishment of a general and uniform system of public schools so effective as to reach each township in the state. Const. art. 8, §§ 1, 3. It does not prescribe the taxing or administration unit. That is left to the legislature. State v. City of St. Paul, 128 Minn. 82, 150 N. W. 389; Associated Schools v. School District, 122 Minn. 254, 142 N. W. 325, 47 L. R. A. (N. S.) 200. To some extent the state is now the taxing unit. The administrative basis of our public school system is the school district maintained chiefly by local taxation.

It is the definite purpose of the statute to impose a burden of taxation upon the county at large for the aid of districts which upon a levy of a 30-mill school tax do not produce a per pupil revenue of $90. It is not claimed that the state might not require each county of the state to make such a levy. The question is whether area and assessed valuation afford a proper basis of classification. The statute is applicable only to St. Louis county. It is hardly to be supposed that another county will come into a class based on such area. The classification is not necessarily bad because it includes but one county. If it is arbitrary and but another way of naming St. Louis county, it is bad. If it is based upon differences reasonably justifying such legislation, it is valid.

We have reached the conclusion that there is such relation between so great an area coupled with so large an assessed valuation as to sustain the propriety of a difference in legislation as to school revenues so that the districts having a relatively small per pupil revenue may have help from the body of the county. So large a county in Minnesota must have sparsely settled communities with a relatively small taxing value. The costs of administration, because of the small number of pupils in a given area, and the large cost of transportation, make a large per pupil education cost in such communities. The large valuation indicates that there is in the property of the county ability to help the less favored districts so that schools of the minimum requirements in the way

of per pupil revenue may be maintained. Whether pupils in every part of properly classified counties, or of the state, shall have substantially the same educational opportunities, the additional revenue therefor coming from a larger taxing unit than the district, is a matter of legislative policy. We cannot say that the classification adopted to accomplish the end in view is arbitrary. That pupils in poor districts in other counties, situate like those benefited in St. Louis, will not be benefited, does not establish an improper classification. The statute, if applied to all counties, in many would result in no material gain to poor districts. In counties having like conditions throughout it would not be effective. Its purpose is to give help to the weaker where conditions throughout a county are not uniform. And again, legislation is not unconstitutional merely because it does not reach so far as possibly it might and though it does not remedy all evils. There are practical elements and practical results to be considered. Miller v. Wilson, 236 U. S. 373, 35 Sup. Ct. 342, 59 L. ed. 628, L. R. A. 1915F, 829; Bosley v. McLaughlin, 236 U. S. 385, 35 Sup. Ct. 345, 59 L. ed. 632; Dominion Hotel v. State, 249 U. S. 265, 39 Sup. Ct. 273, 63 L. ed. 597; Seamer v. Great Northern Railway Co. 142 Minn. 376, 172 N. W. 765.

We make no attempt to review or apply the cases. They are thoroughly considered in the briefs of counsel. That entire harmony or logical consistency should exist in the application of so general a constitutional provision to so many particular instances is not to be expected. The cases and discussions of them are accessible. Dunnell, Minn. Dig. & Supp. §§ 1677-1679; 7 Minn. L. R. 133, 187.

Order affirmed.


STONE, J. (dissenting.)

I dissent.

The subject matter of the law in question is taxation for school purposes, with respect to which local and special laws are prohibited by section 33 of article 4 of the Constitution.

Not only is there a specific prohibition of special legislation con-

cerning the "raising of money" for school purposes, but there is in addition this sweeping mandate:

"In all cases when a general law can be made applicable, no special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question and as such shall be judicially determined without regard to any legislative assertion on that subject."

Notwithstanding these constitutional provisions, we are now upholding a law which confessedly could not be made more special in its sole application to St. Louis county if that county were expressly named as the sole subject of the statute and all others expressly excluded.

The majority opinion does all that is humanly possible to sustain it as against the specific prohibitions of the Constitution and to uphold the bases of classfication adopted—area and assessed valuation. But right there this query asserts itself. Given a county smaller than St. Louis, with some poor and some opulent school districts, why should not the children in the poor districts have the benefit of the same $90 per capita allowance that this statute seeks to guarantee to the children in the least favored district in much favored St. Louis county?

How is the area of a county germane to that inquiry? Given sufficient resources, of what moment is it that a county has more or less than 5,000 square miles of territory?

A classification for present purposes, based upon the number of iron mines, or their output, in the affected territory would be more relevant to the purpose and a much more candid way of effecting it.

But all that goes to the constitutional obstacles to described special legislation and the attempt here made to "plow around" them by resort to classification. Assuming that effort successful— and I don't think it is—and that the specific prohibitions have been escaped, how about the general inhibition of special laws, wherever "a general law can be made applicable?" As to that question, the majority opinion is significantly silent. It can't well be otherwise,

for it would be futile to deny that the scheme of this statute could easily be made applicable to every county in the state.

The trouble is, as demonstrated by Professor Anderson in 7 Minnesota Law Review, 133, 141, 142, that this general prohibition or "sweeping clause" of section 33 has been ignored too much and too long—no more by the legislature than by this court. "The clause appears to be as dead as Ceasar." (page 144)

That is not as it should be. The provision in question is as much constitutional law as any provision of the Bill of Rights. It is just as supreme over both legislative and judicial tendencies to comply with local needs and desires. Why not enforce it accordingly?

Why not, in this case, deal frankly with what the people themselves have termed a "judicial question?" Why not declare the obvious fact that this is a case where a general law can be made applicable and that, in consequence, this undisguised special act is constitutionally out of place and of no validity?