# PHILIP L. HAMLIN v. HOLLIS LADD AND OTHERS.[1]

April 21, 1944.

No. 33,678.

[1]Reported in 14 N. W. (2d) 396.

250

*Albert Johnson,* for appellants.

*Mart M. Monaghan,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff is the register of deeds of Pine county. His elective term expires in January 1947. His is a fee office. In 1942 his income from that source was, in round numbers, $5,000, out of which he paid $2,408.62 for clerk hire.

The individual defendants are the members of the board of county commissioners of that county. In April 1943, acting as such board, they adopted a resolution placing plaintiff's office upon an annual salary basis of $2,500, with an additional allowance of $800 for clerk hire. The effective date was fixed as May 1, 1943, from which time plaintiff was required by the terms of the resolution to pay into the county treasury all fees pertaining to his office. The authority for the board's action is founded upon L. 1943, c. 15, which purports to authorize county boards "in all counties of this state containing not less than 46 nor more than 49 full and fractional congressional townships and having a population of not less than 20,000 nor more than 27,500 to fix salaries."

Plaintiff, claiming the act to be unconstitutional because in violation of Minn. Const. art. 4, §§ 33 and 34, sought injunctive relief to prevent enforcement of the resolution. Defendants' general demurrer was overruled, the court certifying the question presented to be important and doubtful, thus permitting defendants' present appeal to this court.

Some additional facts should now be stated: Pine county has 48 congressional townships within its borders. Its population is 21,478. At least 20 counties in this state come within the population basis fixed by the act. But, coupling the number of townships with the population limitation, as required by the act, Pine is the only county in the state affected by the act.

The trial court was of the view, as stated in its memorandum, that, since the question presented has as its "basis for classification not only population but also limits the application of the act to counties 'containing not less than 46 nor more than 49 full and fractional townships,'" no other county than Pine could come within its provisions. The court could see no "real or substantial distinction" between Pine and some 20 other counties which are within the population limits fixed by the act. Why, said the court, should there be an arbitrary line of distinction drawn between a county having "both full and fractional townships and * * * one having practically the same area but made up wholly of full congressional townships?"

The question is whether the classification is arbitrary and without a reasonable basis. In other words, is it only another way of naming Pine county?

To review our many cases for the purpose of specifically applying them to the question before us is no easy task. As said by Mr. Justice Dibell in State v. Cloudy & Traverse, 159 Minn. 200, 203, 198 N. W. 457, 458, where the same question was presented: "That entire harmony or logical consistency should exist in the application of so general a constitutional provision to so many particular instances is not to be expected."

But there are certain principles so well established by our decisions that we may safely rely upon them as guides to a correct solution of our problem. State ex rel. Bd. of Courthouse, etc. Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150, cited with approval in many of our cases, may be taken as one of the outstanding authorities for decision here.

■ In that case, quoting from an opinion by Chief Justice Gilfillan, the court said (56 Minn. 549, 58 N. W. 152):

"* * * it must be conceded that when a general law, uniform in its operation, is required, the law is none the less general and uniform because it divides the subjects of its operation into classes, and applies different rules to different classes." And continuing: "A law, to be general, need not operate alike upon all the inhabitants of the state, or all the cities or all the villages in the state."

While the line of demarcation between a general and a special law is often indefinite and difficult to draw, yet, if the principles upon which the distinction rests are kept in mind, solution of the problem is not so difficult as first appears. A brief summation of these principles as stated in the Cooley case is deemed helpful (56 Minn. 549, 58 N. W. 153):

■ "* * * A law is general, in the constitutional sense, which applies to and operates uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to itself in matters covered by the law; while a special law is one which relates and applies to particular members of a class, either particularized by the express terms of the act, or separated by any method of selection from the whole class to which the law might, but for such limitation, be applicable."

■ Another (*Id.* 550-551, 58 N. W. 153) "fundamental rule" is that the classification must be based upon "substantial distinctions" —those which make one class really *different* from another. The distinction must be based "upon some natural reason,—some reason suggested by necessity, by some difference in the situation and circumstances of the subjects placed in the different classes, suggesting the necessity of different legislation with respect to them."

■ It is necessary, of course, that the classification (*Id.* 551, 58 N. W. 153) "be germane to the purpose of the law;" *i. e.,* that there "be an evident connection between the distinctive features to be regulated and the regulations adopted."

■ To whatever class the law applies, it must apply to every member of that class; that is to say, it must treat all alike who are similarly situated—(*Id.* 552, 58 N. W. 154) "all who are brought within its influence, but in its classification it must bring within its influence all who are under the same conditions." Lastly, it is to be remembered that one alone may constitute a class as well as a thousand; but, the fewer there are in a class, the more closely will courts scrutinize an act to see if its classification constitutes an evasion of the constitution.

Perhaps the case going furthest to sustain what, on its face, appeared to be special legislation is State v. Cloudy & Traverse, 159 Minn. 200, 202, 198 N. W. 457. There this court was required to determine whether L. 1921, c. 357, which had to do with school tax levies within St. Louis county, could be sustained against objections of the same type as those we have here. We there held (159 Minn. 202, 198 N. W. 457):

"* * * The statute is applicable only to St. Louis county. It is hardly to be supposed that another county will come into a class based on such area. The classification is not necessarily bad because it includes but one county. If it is arbitrary and but another way of naming St. Louis county, it is bad. If it is based upon differences reasonably justifying such legislation, it is valid."

The conclusion there reached was that "there is such relation between so great an area coupled with so large an assessed valuation as to sustain the propriety of a difference in legislation as to school revenues so that the districts having a relatively small per pupil revenue may have help from the body of the county." St. Louis county has an area of more than 5,000 square miles. Its assessed valuation of real and personal property, exclusive of money and credits, then exceeded $250,000,000. These were the facts upon which this court, correctly we think, based its conclusion. In other words, St. Louis county is in a class by itself. Properly and necessarily, so it was considered, the power to legislate concerning it was not to be so handicapped by the constitution as to prevent ap-

propriate legislative action governing its affairs. Pine county cannot claim any such distinction.

■ Plaintiff has alleged, and the demurrer admits, that 20 counties in this state are within the area limits fixed by the act. Pine county "has 48 congressional townships" within its boundaries. "No other county in the state has 46, 47, 48, or 49 congressional townships [within its boundaries] except Stearns County, which has 49." But that county has a population of 67,200, so it is not within the population limits fixed by the act. Obviously, the requirements forming the basis of the classification are not germane to the purpose of the law.

Enough has been said, we think, not only to justify, but to compel, the conclusion that the present act, measured by the principles we have stated, cannot be sustained. It is an arbitrary attempt at classification—simply another way of naming Pine county under the guise of a general law.

Order affirmed.