STATE EX REL. ELMO PAFF AND OTHERS v.
ARCHIE KELLEY AND OTHERS.
CHESTER SUMNER AND OTHERS, INTERVENERS.[1]

January 4, 1952.

No. 35,518.

---

[1]Reported in 50 N. W. (2d) 703.

*John Norton,* City Attorney, for appellants Archie Kelley and others (respondents below).

*Streissguth, Berens & Rodenberg,* for appellant interveners.

*Field, Field & Arvesen,* for respondents (relators below).

MAGNEY, JUSTICE.

In a proceeding in mandamus, petitioners are residents and taxpayers of the city of International Falls. Respondents are the mayor, city clerk, and members of the city council. Interveners are the holders of 17 out of a total of 21 "on sale" liquor licenses issued by the city. Both respondents and interveners appeal from an order of the district court directing that a peremptory writ issue.

The court directed the respondent city officials to take such action as shall be necessary to recall and revoke outstanding "on sale" licenses; to prevent sales in the future by current licensees; and to prevent and prohibit the issuance of more than the legal number of such licenses henceforth. It directed interveners to surrender their "on sale" licenses.

International Falls is a city of the fourth class, operating under a home rule charter. At an election held on September 12, 1933, pursuant to the provisions of L. 1933, c. 214, a majority of electors of the county voted "for repeal." The county thus became what is commonly known and referred to under the general liquor laws of the state as a "wet" county and has remained such. Upon repeal of national prohibition, the legislature passed a general act to regulate the manufacture, sale, and distribution of intoxicating liquors and provided for the licenses therefor. Ex. Sess. L. 1933-1934, c. 46. Such general liquor law is applicable to International Falls and as amended is M. S. A. c. 340.

Section 340.11, subds. 4 and 7, respectively provide as follows:

"All 'on sale' licenses shall be granted and the annual license fee therefor fixed by the respective local governing bodies of the various political subdivisions of the state, * * *. No 'on sale' licenses shall be issued contrary to any of the provisions of sections 340.07 to 340.40.

\* \* \* \* \*

"* * * Not more than five 'on sale' licenses shall be issued in any city of the fourth class, * * *."

If the above were the only statutes involved, it is obvious that the municipal officers of International Falls would have no authority to issue more than five "on sale" licenses.

But in 1937 the legislature passed an act (L. 1937, c. 387 [M. S. A. 340.11, subd. 9]) which purported to amend Ex. Sess. L. 1933-1934, c. 46, § 5, by adding thereto, among other things, the following provisions:

"* * * In cities of the fourth class situated in any county in this state having not less than 100 nor more than 110 full and fractional congressional townships and having a population of not less than 13,000 nor more than 15,000 inhabitants according to the last federal census, the number of 'On sale' licenses shall be determined by the governing body thereof, and where such a city is operating a

municipal liquor store at 'Off sale' only, 'On sale' licenses may be granted to hotels, clubs, restaurants and exclusive liquor stores."

International Falls operates a municipal liquor store at "off sale" only. At the time of the commencement of this action, the city was licensing 21 "on sale" places for the sale and dispensation of intoxicating liquor, 17 of such places being so-called hotels, restaurants, and liquor stores, and 4 so-called clubs.

By the 1930 federal census, Koochiching county had a population of 14,078. By the census of 1940, it had a population of 16,930. Since the census of 1940, and at the present time, the county has a population in excess of 15,000 inhabitants. International Falls is the only city of the fourth class in the county of Koochiching, and Koochiching is the only county in this state having not less than 100 nor more than 110 full and fractional congressional townships.

Respondents and interveners below seek on this appeal to have the writ quashed on the ground that L. 1937, c. 387 (§ 340.11, subd. 9), purportedly authorizing issuance of licenses, is not in contravention of Minn. Const. art. 4, § 33, and that the provisions of that statute authorize the issuance by the city of "on sale" licenses in any number determined by the governing body of the city. Minn. Const. art. 4, § 33, is the section which prohibits the enactment of a special law when a general law can be made applicable. Petitioners, on the other hand, contend that the provisions of L. 1937, c. 387, are unconstitutional under the section of the constitution above referred to, in that it is special legislation. They claim that the classifications are not based upon substantial distinctions, nor upon natural reasons, nor by some reason suggested by necessity by some difference in the situation and circumstances of the subjects placed in the different classes suggesting the necessity for different legislation with respect to them. They say that the characteristics which serve as the basis for the classification in said law are not substantial, but are arbitrary, illusory, and unreasonable, and are not germane to the purpose of the law or the subject being regulated, and that the challenged provisions of the act were passed to apply to,

and do in fact apply *only* to, International Falls and are void and of no effect under Minn. Const. art. 4, § 33.

Upon the facts heretofore detailed, which were all agreed upon at the trial, and applying the constitutional provision above referred to to these facts, the court ordered judgment on the pleadings and by order directed the issuance of a peremptory writ of mandamus as prayed for in the petition.

Obviously, the only question which needs consideration in the disposition of this litigation is whether the provisions of L. 1937, c. 387 (§ 340.11, subd. 9), under which the licenses here involved were issued, are constitutional. If violative of the constitutional provision which prohibits special legislation, the appeal must fail.

The principles upon which legislation may be upheld as general or struck down as special have been stated by this court numerous times. As long ago as 1899, this court observed that the subject of classification had been discussed so often that it was unnecessary to state more than a couple of fundamental principles. State ex rel. Douglas v. Ritt, 76 Minn. 531, 79 N. W. 535. As recently as the case of Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598, the principles were thoroughly discussed. Cases on the subject are collected in 1 Dunnell, Dig. & Supp. §§ 1676 to 1694.

Applying the principles as restated in Loew v. Hagerle Brothers, *supra*, we fail to see how the classification here attempted is germane and relevant to the law. We see no conceivable connection between the number of townships in a county (in this case not less than 100 nor more than 110 full and fractional townships) and any legitimate purpose of liquor regulation and control in a fourth class city within that county. The fact that International Falls is located in one of the larger counties of the state does not place it in a special category for the purposes of statutes involving liquor regulations and control. Regulation and control of the distribution of intoxicating liquor in a municipality in a county are in no way affected by the number of full or fractional townships in that county.

Population is an appropriate classification for many purposes, but this fact does not make it available as a classification for all

purposes. In the instant enactment, the classification is that of fourth class cities in counties with a population of 13,000 to 15,000. Why a city of that class in a county with a population between 13,000 and 15,000 should be singled out for special attention over cities of the fourth class in counties of less than 13,000 or more than 15,000 population in connection with the regulation of licensing the sale of intoxicating liquor is not apparent. This classification on such a population basis has no relation to the subject matter and is in no way germane thereto. It is a purely arbitrary classification. State ex rel. Douglas v. Ritt, 76 Minn. 531, 79 N. W. 535; Murray v. Board of Co. Commrs. 81 Minn. 359, 84 N. W. 103, 51 L. R. A. 828; State ex rel. Town of Sargeant v. County of Mower, 185 Minn. 390, 241 N. W. 60.

On its facts, the instant case is similar to Hamlin v. Ladd, 217 Minn. 249, 14 N. W. (2d) 396. In that case, under an act of the legislature the board of county commissioners fixed the salary of the register of deeds of Pine county. The claimed authority was given the board under an act which permitted county boards (217 Minn. 250, 14 N. W. [2d] 398) "in all counties of this state containing not less than 46 nor more than 49 full and fractional congressional townships and having a population of not less than 20,000 nor more than 27,500 to fix salaries." This court said (217 Minn. 254, 14 N. W. [2d] 400) that it was an arbitrary attempt at classification, as the requirements forming the basis of the classification are not germane to the purpose of the law—"simply another way of naming Pine county under the guise of a general law." So here it is simply another way of naming International Falls under the guise of a general law.

As what we have said disposes of the case, other questions raised need not be considered. The trial court did not err in its rulings.

Affirmed.