## ROBERT WILLIAMS v. GERTRUDE ROLFE AND OTHERS.

114 N. W. (2d) 671.

April 6, 1962—Nos. 38,350, 38,351, 38,361.

*Gordon Rosenmeier* and *John E. Simonett,* for Robert Williams, Russell Lego, and Art Combs.

*Edward L. Rogers,* County Attorney, and *Peterson & Popovich,* Special County Attorneys, for Gertrude Rolfe.

*Peterson & Popovich,* for intervenors.

KNUTSON, CHIEF JUSTICE.

These appeals arise out of proceedings commenced to consolidate a part or all of the unorganized territory of Cass County with existing school districts. The final step in completing the consolidation required the issuance of an order by the county superintendent of schools. Prior to the issuance of such order, plaintiff, Robert Williams, sought and obtained a temporary injunction restraining her from taking that required action. On appeal, we reversed. Williams v. Rolfe, 257 Minn. 237, 101 N. W. (2d) 923. Thereafter the final step was taken to complete the consolidation by the making and filing of such final order. A number of appeals have been taken from the consolidation proceedings, and they are still pending in the trial court awaiting the decision of this court in the matter now before us.

After our decision in the former appeal, plaintiff filed a supplemental complaint setting forth the events that had taken place since the filing of his complaint. His action is a combined one for a declaratory judgment and injunctive relief. He seeks to have declared unconstitutional L. 1957, c. 730, under which the Board of Education of the Unorganized Territory of Cass County was established. Both parties moved for summary judgment. The trial court held that c. 730 was unconstitutional but that acts performed by the board established under c. 730 prior to its determination of unconstitutionality were valid under the doctrine of The Marckel Co. v. Zitzow, 218 Minn. 305, 15 N. W. (2d) 777. The questions involved were certified as being important and doubtful, and both parties have appealed from the determination of the trial court. It is the contention of plaintiff that the court erred in holding the acts of the board prior to a determination of unconstitutionality valid. It is the contention of defendant that the court erred in

holding c. 730 unconstitutional. A number of other contentions are advanced by both parties, but in view of our determination of the constitutional question, it is not necessary for us to consider them.

L. 1957, c. 730, as far as here material, reads:

"Section 1. Laws 1941, Chapter 541, Section 1, as amended by Laws 1951, Chapter 496, Section 1, is amended to read:

"Section 1. County board of education for unorganized territory. Subdivision 1. In any county containing not less than 17,000 nor more than 20,000 inhabitants, and not less than 70 and not more than 80 full and fractional congressional townships, the board of county commissioners within 60 days after the passage of this act shall appoint the chairman of the county board of education for unorganized territory, who shall serve until the first Monday in January, 1943.

"Subd. 2. Every four years the chairman and the elected members of the county board of education for unorganized territory shall be elected.

"Subd. 3. All laws applying to candidates for and election of county officers shall apply to the election of the chairman, and the elected members of the board, except that they must reside in such unorganized territory at the time of their election and they shall be voted on only by the qualified electors residing in such territory. A vacancy in such office shall be filled in the same manner as a vacancy in any county office.

"Subd. 4. A special election shall be called by the board of education for unorganized territory to be held in the unorganized territory to elect two members of the board for terms commencing with the date of the election and until the first Monday in January following the next general election; at such general election successors shall be elected to serve for a term of two years. At each election thereafter two members shall be elected for two year terms.

"Subd. 5. In addition to the chairman and the two elected members provided for above, the county superintendent of schools shall, ex officio, be a member and clerk of the board, and the county treasurer shall, ex officio, be a member and treasurer of the board."

It is conceded that at the time c. 730 was enacted five counties

came within the population range specified in the act, namely, Cass, Carver, Meeker, Le Sueur, and Pine. Two counties came within the required number of townships, but only Cass County qualified both as to population and number of townships. Thus, it follows that the act can apply only to Cass County.

Stripped of all legal technicalities, the question before us on these appeals is whether L. 1957, c. 730, is a special law violative of Minn. Const. art. 4, §§ 33 and 34.

■ The proscription against legislative enactment of special laws first came into our constitution by an amendment in 1881. As originally adopted, the amendment was quite specific and quite limited in its scope.[1] Apparently it was unsatisfactory. A further amendment was adopted in 1892, which extended the scope of the constitutional prohibition against special legislation and added a "sweeping clause" contained in the first sentence of that amendment. The constitution as so amended remained the same until 1958, when it was again amended,

---

[1]Section 33 provided:

"The legislature is prohibited from enacting any special or private laws in the following cases:

"1. For changing the name of a person, or constituting one person the heir at law of another.

"2. For laying out, opening, or altering highways.

"3. For authorizing persons to keep ferries across streams wholly within this state.

"4. For authorizing the sale or mortgage of real or personal property of minors or other persons under disability.

"5. For changing any county-seat.

"6. For assessment or collection of taxes, or for extending the time for the collection thereof.

"7. For granting corporate powers or privileges, except to cities.

"8. For authorizing the apportionment of any part of the school fund.

"9. For incorporating any town or village.

"10. For granting to any individual, association, or corporation, except municipal, any special or exclusive privilege, immunity, or franchise whatever.

"11. For vacating roads, town plats, streets, alleys, and public grounds.

"But the legislature may repeal any existing special law relating to the foregoing subdivisions."

removing many of the proscriptions theretofore existing and limiting its scope considerably.[2] We are here concerned with the constitution as it existed prior to the 1958 amendment. It then read, as far as here material:

"In all cases when a general law can be made applicable, no special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject. The legislature shall pass no local or special law regulating the affairs of, or incorporating, erecting or changing the lines of, any county, * * * or school district, or creating the offices, or prescribing the powers and duties of the officers of, or fixing or relating to the compensation, salary or fees of the same, or the mode of election or appointment thereto, * * *; regulating the management of public schools, the building or repairing of schoolhouses, and the raising of money for such purposes; * * *. *Provided, however,* That the inhibitions of local or special laws in this section shall not be construed to prevent the passage of general laws on any of the subjects enumerated."

Minn. Const. art. 4, § 34, which was adopted by the 1881 amendment and remained the same until the 1958 amendment, reads:

"The legislature shall provide general laws for the transaction of any business that may be prohibited by section one (1)[3] of this amendment, and all such laws shall be uniform in their operation throughout the State."

This constitutional provision has been the source of much litigation.[4] From the decisions of this court some rules have evolved which, though clear enough when abstractly stated, are not always easy of application. Nor are the cases always easy to reconcile. In State v. Cloudy & Traverse, 159 Minn. 200, 203, 198 N. W. 457, 458, we said:

---

[2]See, L. 1959, p. 17.

[3]Obviously this refers to art. 4, § 33.

[4]See, 3 Dunnell, Dig. (3 ed.) § 1678, et seq. For a good discussion of the subject, see Anderson, *Special Legislation in Minnesota,* 7 Minn. L. Rev. 133.

"* * * That entire harmony or logical consistency should exist in the application of so general a constitutional provision to so many particular instances is not to be expected."

Obviously the original amendments in 1881 and 1892 were adopted to prevent a rash of special legislation that plagued the legislature in the early part of our state's existence.[5] Due to difficulties of applying this constitutional provision to given facts, it may be that decisions have prevented it from accomplishing much of what was intended. Part of the reason for this may lie in the reluctance of the courts to overturn an act of the legislature on constitutional grounds unless the reason for doing so is compelling. This is particularly true in those areas of law lying peculiarly within the regulatory power of the legislature, such as the location, operation, and management of school districts. The decisions have led Professor Anderson to say that the "sweeping clause" involved in the first sentence of the 1892 amendment "appears to be as dead as Caesar."[6]

The importance of the present litigation and the impact of this decision on the people involved has induced us to make a complete reexamination of the case law on this subject in order that we might determine, in the light of past decisions, whether this statutory enactment should be stricken down.

After the adoption of the 1881 amendment, and prior to the adoption of the 1892 amendment, Nichols v. Walter, 37 Minn. 264, 33 N. W. 800, came before us, involving L. 1885, c. 272, which provided a mode for changing county seats by county commissioners. In holding that the act was unconstitutional, we discussed the question of permissible classification by the legislature and, after reviewing some foreign authorities, said (37 Minn. 272, 33 N. W. 802):

"* * * the true practical limitation of the legislative power to classify is that the classification shall be upon some apparent natural reason,—some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes

---

[5]See, Anderson, *Special Legislation in Minnesota,* 7 Minn. L. Rev. 133.
[6]Id. 7 Minn. L. Rev. 144.

as suggests the necessity or propriety of different legislation with respect to them."

Shortly after the adoption of the 1892 amendment, State ex rel. Bd. of Courthouse & City Hall Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150 (1893), came before us. The legislature had enacted Sp. L. 1887, c. 395, creating a board of commissioners with power to acquire land for the purpose of erecting a building to be used jointly by Hennepin County and the city of Minneapolis. The building was partially completed when funds for its construction ran out. The board was then authorized by L. 1893, c. 243, to issue additional bonds, but the county auditor refused to sign them on the ground that the act was violative of Minn. Const. art. 4, § 33. This court first held that the act was unconstitutional, but, on reargument, the question of whether the act, even though special in form, was general in application was presented, and we then held that the act was general under the constitution even though it could have application only to Hennepin County and the city of Minneapolis. In so doing, we announced several rules that have since been consistently followed. We there said (56 Minn. 549, 58 N. W. 153):

"* * * A law is general, in the constitutional sense, which applies to and operates uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to itself in matters covered by the law; while a special law is one which relates and applies to particular members of a class, either particularized by the express terms of the act, or separated by any method of selection from the whole class to which the law might, but for such limitation, be applicable. * * *

\* \* \* \* \*

"The fundamental rule is that all classification must be based upon substantial distinctions, which make one class really different from another. As was said in Nichols v. Walter [37 Minn. 264, 33 N. W. 800] and State ex rel. v. Spaude [37 Minn. 322, 34 N. W. 164], it must be based upon some natural reason, — some reason suggested by necessity, by some difference in the situation and circumstances of the subjects placed in the different classes, suggesting the necessity of

different legislation with respect to them. By necessity is meant practical, and not absolute, necessity; but the characteristics which will serve as a basis of classification must be substantial, and not slight or illusory.

*    *    *    *    *

"Another rule is that the characteristics which form the basis of the classification must be germane to the purpose of the law; in other words, legislation for a class, to be general, must be confined to matters peculiar to the class. There must be an evident connection between the distinctive features to be regulated and the regulations adopted. * * *

"Another rule is that, to whatever class a law applies, it must apply to every member of that class. * * *

"Another proposition that may be laid down as beyond question is that, if the basis of classification is valid, it is wholly immaterial how many or how few members there are in the class. One may constitute a class, as well as a thousand, although, of course, the fewer the members, the closer the courts will scrutinize the act to see that it is not an evasion of the constitution."

The rules announced in the Cooley case have been frequently reiterated. As a matter of fact, in applying these rules other rules have evolved liberalizing what we said in the Cooley case.

The trial court in the case now before us placed decision largely on the ground that the act applied only to Cass County. It is clear from the decisions that the fact that an act of the legislature can apply to only one county or one subdivision of the state is not enough to invalidate it if there are other reasonable grounds for placing that subdivision in a class by itself.

State v. Cloudy & Traverse, 159 Minn. 200, 198 N. W. 457, involved the constitutionality of L. 1921, c. 357, providing for county school tax levies in certain counties of the state. In upholding the constitutionality of that act we said (159 Minn. 202, 198 N. W. 457):

"* * * The statute is applicable only to St. Louis county. It is hardly to be supposed that another county will come into a class based on such area. The classification is not necessarily bad because it in-

cludes but one county. If it is arbitrary and but another way of naming St. Louis county, it is bad. If it is based upon differences reasonably justifying such legislation, it is valid.

"We have reached the conclusion that there is such relation between so great an area coupled with so large an assessed valuation as to sustain the propriety of a difference in legislation as to school revenues so that the districts having a relatively small per pupil revenue may have help from the body of the county. So large a county in Minnesota must have sparsely settled communities with a relatively small taxing value. The costs of administration, because of the small number of pupils in a given area, and the large cost of transportation, make a large per pupil education cost in such communities. The large valuation indicates that there is in the property of the county ability to help the less favored districts so that schools of the minimum requirements in the way of per pupil revenue may be maintained. Whether pupils in every part of properly classified counties, or of the state, shall have substantially the same educational opportunities, the additional revenue therefor coming from a larger taxing unit than the district, is a matter of legislative policy. We cannot say that the classification adopted to accomplish the end in view is arbitrary. * * * legislation is not unconstitutional merely because it does not reach so far as possibly it might and though it does not remedy all evils. There are practical elements and practical results to be considered."

State ex rel. Anderson v. Sullivan, 72 Minn. 126, 75 N. W. 8, involved the constitutionality of L. 1895, c. 301, by the terms of which all counties having a population of not less than 100,000 and not over 185,000 were affected. Only one county, Ramsey, came within the classification. In upholding the constitutionality of the act we said (72 Minn. 132, 75 N. W. 9):

"* * * The subject of classification by population is so largely a matter of policy, and the considerations which enter into it are so numerous and complex, that the legislature must necessarily be allowed a large discretion in the matter; and the courts ought not to hold a statute invalid or special legislation unless it appears very clearly that the basis of classification adopted is purely arbitrary. * * *

"If the basis of classification is proper, an act is general, although it operates only for one class of municipalities, and makes no provision as to those not falling within the class, or for those which, by reason of an increase or decrease of population, pass out of the class."

Numerous other cases have held the same. See, State ex rel. City of Duluth v. District Court, 61 Minn. 542, 64 N. W. 190; State ex rel. Board of Education v. Minor, 79 Minn. 201, 81 N. W. 912; State ex rel. Young v. Henderson, 97 Minn. 369, 106 N. W. 348; State ex rel. Flaten v. Independent School Dist. 143 Minn. 433, 174 N. W. 414; Kramer v. County of Renville, 144 Minn. 195, 175 N. W. 101; Jensen v. Independent School Dist. No. 17, 163 Minn. 412, 204 N. W. 49.

■ The propriety of classification for the purpose of legislation is primarily for the legislature. All laws passed by the legislature are presumed to be valid. We assume that the legislature makes the necessary inquiry and rightly determines the propriety of the classification which it adopts, and we will not disturb the legislative determination unless the classification is clearly arbitrary and without reasonable basis.

In Gunderson v. Williams, 175 Minn. 316, 317, 221 N. W. 231, 232, we said:

"* * * The question of classification is primarily for the legislature. It is not enough that we do not see all the facts justifying the classification. To declare the statute unconstitutional, we must say that the legislature could not reasonably and intelligently make the classification."

In State ex rel. Anderson v. Sullivan, 72 Minn. 126, 133, 75 N. W. 8, 10, we said:

"* * * where a statute is assailed as invalid, * * * every presumption and intendment is in favor of the constitutionality of the act, and the courts will not be justified in pronouncing it invalid unless satisfied beyond reasonable doubt of its repugnance to the constitution."

To the same effect, see Seamer v. G. N. Ry. Co. 142 Minn. 376, 172 N. W. 765; State ex rel. Flaten v. Independent School Dist. 143 Minn. 433, 174 N. W. 414; Minnesota Wheat Growers Co-op. Market Assn. v. Huggins, 162 Minn. 471, 203 N. W. 420; State ex rel. Dedina v.

School Board, 167 Minn. 421, 209 N. W. 531; State ex rel. Young-quist v. Common School Dist. No. 78, 180 Minn. 44, 230 N. W. 115; State v. Brown, 189 Minn. 257, 248 N. W. 822, 249 N. W. 569; Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 292, 148 N. W. 71, 74, L. R. A. 1916D, 412, 418, where we said:

"* * * When such questions [determination of classification] have been determined by the legislature, the legislative judgment is binding upon the courts, unless they can point out that the classification adopted is purely fanciful and arbitrary, and that no substantial or logical basis exists therefor."

In State v. Delaware Iron Co. 160 Minn. 382, 384, 200 N. W. 475, 476, we applied this rule with respect to the question of proper classification and said:

"The act is general in form, but it is conceded that Itasca county is the only county which now comes within its provisions. That only one county is now within the class created by the act does not make it void as special legislation, unless other counties, similarly situated and having like need for similar legislation, are arbitrarily excluded by provisions which have no legitimate relation to the subject-matter of the legislation or the purpose intended to be accomplished by it. We start with the presumption that the circumstances and conditions specified by the legislature furnish a proper and sufficient basis for the classification, and that the act is valid."

The mere fact that an act is not applicable to other counties does not invalidate it unless other counties similarly situated and having like need for similar legislation are arbitrarily excluded. State v. Cloudy & Traverse, 159 Minn. 200, 198 N. W. 457; State ex rel. Dedina v. School Board, 167 Minn. 421, 209 N. W. 531; State v. Delaware Iron Co. 160 Minn. 382, 200 N. W. 475; State v. Brown, 189 Minn. 257, 248 N. W. 822, 249 N. W. 569.

In State ex rel. Dedina v. School Board, *supra*, the rules we have discussed here are recognized, but the act there involved, L. 1923, c. 431, was held to be unconstitutional for the reason that the basis of the classification had no relationship to the purpose sought to be

accomplished. The reasons for holding the act unconstitutional are set forth in our opinion.

On several occasions we have recognized the fact that the legislature, knowing the condition of unorganized schools in the northern part of this state, conceivably took cognizance of existing conditions in classifying various districts. In Ostrander v. Fogarty, 186 Minn. 554, 556, 244 N. W. 56, 57, we said:

"* * * It was for the legislature in the first instance to make the classification. Knowing the general condition of unorganized schools in the northern part of the state, it might find such a relationship between the number of schools in the unorganized territory and the one per cent based on disbursements as to make the classification proper. It made whatever investigation was needful and exercised its judgment. The question of classification is quite usually debatable from both sides."

In Gunderson v. Williams, 175 Minn. 316, 221 N. W. 231, a law involving the fixing of the salaries of school district officers was involved. In holding that it was not violative of Minn. Const. art. 4, § 33, we said (175 Minn. 317, 221 N. W. 232):

"The ten-township school districts extend over a large territory in the sparsely settled regions of the state far to the north. There are few of them. One of the briefs states that this district contains 900 square miles. It is one of a few of such districts that contains a high school. The effort has been to make this district afford to the school children within it an opportunity for school facilities through the high school. It is not difficult to see that such a district, so large geographically and with less than 30 schools, presents problems of greater difficulty than if the population were dense and the area smaller, and that there is entailed upon the school board much more labor in so arranging the schools that all the school children may have common school facilities and at the same time an opportunity to reach the high school. The work is greater than if there were no high school. Perhaps it is greater than if there were several high schools. At any rate there are reasons which we can see for permitting compensation to be voted the school officers, and there may be reasons for doing so which we do not see."

In County Board of Education v. Borgen, 193 Minn. 525, 529, 259 N. W. 67, 68, we upheld the constitutionality of Ex. Sess. L. 1933-1934, c. 45, which permitted the unorganized territory of St. Louis County to issue bonds for certain purposes. There we said:

"Area of 3,500 square miles, assessed valuation of $3,000,000 or more, are factors suggesting the propriety of different legislation with respect to the members of the different classes. An unorganized territory having such a large area could be found only in rural, sparsely settled sections of the state. It is readily apparent that such an extensive territory, with small proportionate revenue received from taxation, would be, in these trying times, in a less satisfactory financial condition than a smaller, more compact territory. Such classification is sufficiently germane to the purpose and object of the act to make it constitutional."

■ The present tendency is to leave the matter of classification largely to the legislature.[7] The burden of proving a classification arbitrary or unreasonable rests upon the one who asserts it.[8]

Plaintiff relies on Hamlin v. Ladd, 217 Minn. 249, 14 N. W. (2d) 396. The facts in that case are clearly distinguishable from those in the case now before us. L. 1943, c. 15, was involved, purporting to authorize county boards "in all counties of this state containing not less than 46 nor more than 49 full and fractional congressional townships and having a population of not less than 20,000 nor more than 27,500 to fix salaries." There were 20 other counties that came

---

[7] 3 Dunnell, Dig. (3 ed.) § 1678, note 28.

[8] State v. Wong Hing, 176 Minn. 151, 222 N. W. 639; 3 Dunnell, Dig. (3 ed.) § 1678; Lindsley v. Natural Carbonic Gas Co. 220 U. S. 61, 31 S. Ct. 337, 55 L. ed. 369, Ann. Cas. 1912C, 160. In Borden's Farm Products Co. Inc. v. Baldwin, 293 U. S. 194, 209, 55 S. Ct. 187, 192, 79 L. ed. 281, 288, the court said:

"* * * When the classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary."

within the population limits of the act but only Pine County came within both the population limits and the required number of full or fractional townships. Obviously, there was no reasonable ground for segregating Pine County from the other counties having substantially the same population in fixing salaries of county officials, and it was correctly held that under these circumstances the act was in contravention of the constitutional proscription against special legislation.

The same is true of Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598, where the act involved was drawn to extend benefits of our compensation laws to one person, and State ex rel. Paff v. Kelley, 235 Minn. 350, 50 N. W. (2d) 703, where no reasonable grounds appeared for applying the act to one city within the state.

■ In the light of the rules to be found in our decisions, it remains for us to determine whether the act now under consideration is a special act violative of the constitutional proscription or whether justification can be found for placing Cass County in a classification by itself for the purpose of operating the schools in its unorganized territory.

School districts are established by the legislature, and the management of schools as a general rule is vested in a board elected by the people living within the district. Unorganized territory, which consists of that part of a county not included within an organized district, is the exception. It is common knowledge that unorganized territory exists, almost exclusively, in the counties in the northern part of the state where the population is not dense enough to warrant the formation of a school district. In the few counties remaining in which unorganized territory may be found, the area comprising such territory is not large in proportion to the total area of the county. It is stipulated that in Cass County the unorganized territory consists of about 715 sections of land, which, mathematically, amounts to approximately 457,600 acres. The land area in Cass County is 1,302,315.38 acres. (See Minnesota Legislative Manual, 1959-1960, p. 300.) Thus, roughly, the unorganized territory comprises more than one-third of the land area of the county. Prior to 1948 the unorganized territory of Cass County was even larger, but substantial tracts of the land of such territory were annexed to other districts or formed into new districts in 1948,

1949, 1951, and 1952. Included in the unorganized territory as it now exists is all or part of 18 townships, 2 unorganized townships, and 5 small villages. Including the children residing in the villages, there are approximately 740 school children in the territory. The unorganized territory has an assessed valuation of approximately $950,000.

Apparently in recognition of the fact that a large part of Cass County consists of unorganized territory, the legislature, since 1941, has provided some control over the school affairs of the territory by the people living within it.

By L. 1921, c. 328, the duty of providing for the education of children of school age in unorganized territory generally was vested in the county board of education for unorganized territory, composed of the chairman of the county board of commissioners, the county superintendent of schools, and the county treasurer, acting ex officio, all of whom are elected by the people of the county at large. (This provision was retained in Ex. Sess. L. 1959, c. 71, § 26, subds. 1 and 2 [Minn. St. 123.56, subds. 1 and 2].) However, since 1941, the legislature has permitted the people in the unorganized territory of Cass County to elect the chairman of the Board of Education of its unorganized territory. L. 1941, c. 541.[9] L. 1957, c. 730, under attack in this case, was an amendment of L. 1941, c. 541. It gave to the people of the un-

---

[9]Section 1. "In any county containing more than 20,000 inhabitants, and not less than 70 and not more than 80 full and fractional congressional townships, the board of county commissioners within 60 days after the passage of this act shall appoint the chairman of the county board of education for unorganized territory, who shall serve until the first Monday in January, 1943, and every four years thereafter, the chairman of the county board of education for unorganized territory shall be elected. All laws applying to candidates for and election of county officers shall apply to election of such chairman, except that he must reside in such unorganized territory at the time of his election and is to be voted on only by the qualified electors residing in such territory. A vacancy in such office shall be filled in the same manner as a vacancy in any county office. The county superintendent of schools shall, ex officio, be a member and clerk of the board, and the county treasurer shall, ex officio, be a member and treasurer of the board."

organized territory the right to elect three members of the board instead of one.

It is interesting to note that at the same legislative session at which c. 730 was adopted our legislature enacted a comprehensive recodification of our laws relating to schools and education. L. 1957, c. 947. It must be assumed that in adopting c. 730 the legislature had in mind a difference with respect to unorganized territory in Cass County from that in other counties in the state. L. 1957, c. 947, art. 7, deals with the operation of schools in unorganized territory. There, as in the former law (Minn. St. 1953, § 123.34), a distinct provision was made for the board of education in unorganized territory in counties having more than 15,000 inhabitants and an area of more than 3,000 square miles. The counties of St. Louis, Koochiching,[10] and Beltrami were then the only three counties in the state that could qualify as to both population and area, so, in a sense, the general law itself could as well be said to be special as c. 730 is claimed to be. It is obvious that the legislature, for many years, has recognized the fact that unique problems are involved in the management of the schools in unorganized territory in counties having large areas or in counties in which the unorganized territory consists of a large part of the entire county.

Having in mind that it is presumed that a legislative act is constitutional and that the legislature has made the necessary investigation as to the advisability of passing the act, we are of the opinion that the situation existing in Cass County with respect to the relative area of the unorganized territory as compared with the total area of the county; sparsity of population and the number of school children living within the unorganized territory; the nature of the terrain; and other factors affecting the operation of schools in this area would justify a classification of the county made by the legislature in determining to give to the people of that area a measure of control over their schools.

The orders of the trial court are reversed and the case remanded

---

[10]Provisions were made for the dissolution of the unorganized territory of Koochiching County by L. 1961, c. 193.

for such further proceedings, not inconsistent with this opinion, as may be required.

Reversed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.