STATE OF WEST VIRGINIA *ex rel.* TAXPAYERS PROTECTIVE ASSOCIATION OF RALEIGH COUNTY

*v.*

C. HAROLD HANKS, *Clerk of the Circuit and Intermediate Courts of Raleigh County*

(No. 13407)

Submitted October 9, 1973.    Decided December 18, 1973.

C. M. Elmore, pro se.

C. Harold Hanks, pro se.

SPROUSE, JUSTICE:

This is a proceeding in mandamus seeking an order requiring the respondent, the Clerk of the Circuit and Intermediate Courts of Raleigh County, to open his office to the public on Monday through Saturday of each week.

The relator, Taxpayers Protective Association of Raleigh County, is a legally created unincorporated association engaged in activities concerning public affairs in Raleigh County, West Virginia. The respondent, C. Harold Hanks, is the Clerk of the Circuit and Intermediate Courts of Raleigh County, West Virginia.

The Legislature of West Virginia enacted a law in the 1971 Regular Session requiring offices in the courthouses throughout the State to remain open to the public on Monday through Saturday during hours prescribed by the county court. Chapter 7, Article 3, Section 2, Code, 1931, as amended by Chapter 25, Acts of the Legislature,

Regular Session, 1971. The legislation provided that courthouses in counties having a population in excess of 100,000 may, with the consent of the county court, be closed on Saturdays. Cabell County and Kanawha County are the only two counties in the State with populations over 100,000; fifty-three counties have less.

At a regular meeting of the Raleigh County Court on Tuesday, August 28, 1973, the county court entered an order requiring the offices of the courthouse to be open on Saturday mornings. The respondent advised the county court during that meeting that he would not comply with the order and has refused thereafter to open the circuit clerk's office on Saturday mornings.

There is no factual conflict. The petitioner avers the sequence of events as set out above and the respondent admits them. The respondent maintains, however, that the portion of Chapter 7, Article 3, Section 2 of the West Virginia Code, 1931, as amended, requiring county courthouses to be open on Saturday, but excepting Cabell and Kanawha counties, is unconstitutional as violative of Article VI, Section 39 of the Constitution of West Virginia (hereinafter referred to as Article VI, Section 39) and of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

Article VI, Section 39 enumerates specific grounds upon which the Legislature shall not pass local or special laws, including that of "[r]egulating or changing county or district affairs"; and in addition, concludes as follows: "The legislature shall provide, by general laws, for the foregoing and all other cases for which provision can be so made; and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, * * * ."

This Court has said the purpose of Article VI, Section 39 is to preserve uniformity and consistency in statutory enactments. *Brozka v. County Court of Brooke County,* 111 W.Va. 191, 160 S.E. 914. The Supreme Court of

Virginia interpreting a similar provision in the Virginia Constitution said that these limitations by constitutional law had their genesis in a purpose to remedy the mischief of intentionally arbitrary and exclusive legislation. *Martin's Ex'rs v. Commonwealth,* 126 Va. 603, 102 S.E. 77, *reh. den.,* 126 Va. 603, 102 S.E. 724.

The framers of our first Constitution were concerned with the possibility of legislatures enacting improper special laws. A. D. Soper, President of the First Constitutional Convention, said in remarks before the Convention:

> "Your attention, however, is called to the fact, that in all practicable cases, the legislature is required to act by general laws. This obviates, to a great extent, the necessity for special legislation, and discourages that private solicitation of the members, the tendency of which is to introduce corruption and bribery as elements of legislation. * * *

> *  *  *

> "The confinement of the action of the legislature to general laws in reference to those practical matters which concern every citizen and every section of the State, gives assurance that, if not at first, yet speedily, those laws will receive that form which is most in accordance with the united wisdom and experience of the whole population. This illustrates the true theory and object of representative government." Volume III, DEBATES AND PROCEEDINGS OF THE FIRST CONSTITUTIONAL CONVENTION OF WEST VIRGINIA, 831-33.

The decisions interpreting the language of Article VI, Section 39, that "in no case shall a special act be passed, where a general law would be proper, * * *" have not been uniform in West Virginia. The early prevailing opinions of our Court gave to the Legislature the unquestioned prerogative to enact special or general laws—holding this to be an area of legislative discretion not reviewable by a court despite the provisions of Article VI, Section 39. *Casto v. Upshur County High School*

*Board,* 94 W.Va. 513, 119 S.E. 470; *Herold v. McQueen,* 71 W.Va. 43, 75 S.E. 313. Later this Court's position evolved into our rule that a special act is not void under Article VI, Section 39 unless it clearly appears that a general law would have accomplished the legislative purpose as well. *Truax-Traer Coal Company v. Compensation Commissioner,* 123 W.Va. 621, 17 S.E.2d 330; *Brozka v. County Court of Brooke County, supra; Woodall v. Darst,* 71 W.Va. 350, 77 S.E. 264. See *Kanawha County Public Library v. The County Court of Kanawha County,* 143 W.Va. 385, 102 S.E.2d 712.

*Groves v. County Court of Grant County,* 42 W.Va. 587, 26 S.E. 460, dealt with a specifically enumerated ground, *i.e.,* "[l]ocating, or changing county seats". It was held that the form of the legislation under attack was inconsequential. The legislation under attack in that case was an act relating to elections for relocation of county seats which, although not mentioning Grant County by its terms, could only have been applicable to Grant County. The Court said [42 W.Va. at 593, 26 S.E. at 462]: "This is classification run mad. Why not say all counties of the state named 'Grant'?" Since *Groves,* there have been a number of cases in this jurisdiction determining whether a legislative enactment was an unconstitutional special enactment due to its classification. Including *Groves,* these cases have held proper classification to be a vital element in all legislation scrutinized under the limitations of Article VI, Section 39, whether the legislation dealt with a specifically enumerated subject matter or one included under the general prohibition: " * * * and in no case shall a special act be passed, where a general law would be proper, * * * ."

In these cases, the interpretation of Article VI, Section 39 has further evolved to the modern rule holding that a statute is a valid general law when it operates uniformly on all persons and things of a class as long as such classification is natural, reasonable and appropriate to the object sought to be accomplished. *State ex rel.*

*Appalachian Power Company v. Gainer,* 149 W.Va. 740, 143
S.E.2d 351; *State ex rel. Heck's Inc. v. Gates,* 149 W.Va.
421, 141 S.E.2d 369; *State ex rel. The County Court of
Cabell County v. Battle,* 147 W.Va. 841, 131 S.E.2d 730;
*State ex rel. Plymale v. City of Huntington,* 147 W.Va. 728,
131 S.E.2d 160. See also 2 SUTHERLAND, STATUTORY CON-
STRUCTION 149 (4th ed.) which states:

> "When an act is assailed as class or special
> legislation, the attack is usually based on the
> claim that there are persons or things similarly
> situated to those embraced in the act which by the
> terms of the act are excluded from its operation.
> The question then is whether the persons or
> things embraced by the act form by themselves a
> proper and legitimate class with references to the
> purposes of the act. * * * "

Legislation relating to one subject matter but affecting
counties or municipalities in varying ways according to
different populations is a device used by modern legisla-
tures with some frequency. In this State, such legislation
is, of course, subject to the limitations of Article VI,
Section 39 prohibiting special legislation.

This Court in *State ex rel. The County Court of Cabell
County v. Battle, supra,* upheld the primary portions of a
statute providing salaries of circuit judges which varied
in amount according to the population of the circuit. A
part of the statute was severed, however, and held to be
unconstitutional. That part of the legislation treated
Wyoming and Cabell counties as a separate classification
and fixed a specific dollar limitation on the increase in
these salaries. The Court stated in the third point of the
syllabus: "A reasonable classification by population with
regard to compensation to be paid to circuit judges is not
violative of the constitutional provision requiring such
matters to be provided for by general laws." The Court,
however, in the fourth point of the syllabus held, in
reference to the specific limitations placed upon the
county courts of Cabell and Wyoming counties, as follows:
"A classification which excludes without any reasonable
basis certain public officers who would otherwise be

subject to a general law on the same matter is arbitrary and violative of the constitutional provisions forbidding special laws where a general law is required or would be proper."

Courts in other jurisdictions have faced the same problem. The Minnesota Supreme Court held that an act is not invalid by the fact that it applies to only one county if the act employed a classification which bore a reasonable relation to the purpose of the act. *Williams v. Rolfe,* 262 Minn. 284, 114 N.W.2d 671.

In *Tulsa Exposition and Fair Corporation v. Board of Commissioners of the County of Tulsa,* 468 P.2d 501 (Okla.), the Supreme Court of Oklahoma, interpreting a similar constitutional provision, held a statute unconstitutional which by form related to only one county. The legislation authorized county fairs to be held in all counties of a population between 100,000 and 200,000. The court held this classification by population had no relation to the subject matter of the particular legislation.

The Supreme Court of Georgia in *City of Atlanta v. Gower,* 216 Ga. 368, 116 S.E.2d 738, held unconstitutional a statute which authorized the governing boards of cities having a population of more than 300,000 to fix an unlimited tax on the professions, whereas cities of a population under 300,000 were limited to imposing a maximum tax of $15.00. The Georgia court said that [216 Ga. at 371, 116 S.E.2d at 741]: " * * * the legislature would be authorized to make a classification of cities on the basis of population, and pass a general law with reference to such classification, provided the basis of classification has some reasonable relation to the subject matter of the law, and furnishes a legitimate ground for differentiation, and provided that the act is so framed as to let in all cities coming within the population classification, and let out all cities falling below the classification. * * * "

The California Supreme Court in *Binns v. Hite*, 37 Cal. Rptr. 323, 389 P.2d 947, however, upheld an act which authorized the elimination of uncontested judgeships from ballots in districts exceeding a population of two million. The act applied only to one county.

See also *State ex rel. White v. Board of County Com'rs. of Wyandotte County*, 140 Kan. 744, 39 P.2d 286, where a statute was held invalid under the Equal Protection Clause of the Kansas and United States Constitutions because the classification by population was not reasonable.

Conceptually, the Equal Protection Clause of the Fourteenth Amendment could bear on the resolution of this case. In fundamental interest categories, classification legislation by a state legislature must undergo a searching scrutiny to insure that it is justified by a compelling state interest. *Harper v. Virginia Board of Elections*, 383 U.S. 663. State classification relating to all other types of interests satisfies the equal protection requirements unless it is wholly irrelevant to the achievement of the state's objective. *Lindsey v. Normet*, 405 U.S. 56; *McGowan v. Maryland*, 366 U.S. 420. See also *Lindsley v. Natural Carbonic Gas Company*, 220 U.S. 61, and see *State ex rel. Heck's, Inc. v. Gates*, *supra*; *State ex rel. The County Court of Cabell County v. Battle*, *supra*; *Truax-Traer Coal Company v. Compensation Commissioner*, *supra*; *Mandell v. Haddon*, 202 Va. 979, 121 S.E.2d 516, which states [202 Va. at 992, 121 S.E.2d at 526]: "The equal protection clause of the Fourteenth Amendment does not deprive States of the power to make a reasonable classification * * * , provided the classification is based on some real and substantial relation to the objects sought to be accomplished * * * ." There are serious doubts, however, as to the standing of the respondent to raise the equal protection issue, and we think further consideration of this point is unnecessary in light of our decision concerning the applicability of Article VI, Section 39 of the Constitution of West Virginia.

The purpose of the amendment to Code, 1931, 7-3-2, is simply to require offices in county courthouses to be open for access to the citizens of each affected county on Saturdays. The legislation regardless of form, exempts Cabell and Kanawha counties from its operation. Those two counties admittedly are more urban than other areas in the State.

A legislative regulation of this nature could well be controlled by the enumerated item in Article VI, Section 39, prohibiting special legislation on "[r]egulating or changing county or district affairs". It is also subject to the control of the general prohibition that "in no case shall a special act be passed, where a general law would be proper, * * * ". Under either limitation, we must consider whether the basis of classification is natural, reasonable and appropriate to the object sought to be accomplished. Compare the legislation considered in *State ex rel. The County Court of Cabell County v. Battle, supra,* which regulated salaries of circuit judges of the State according to the populations of their circuits. As this Court found, that was an example of a reasonable classification. A more populated area would be expected to suffer a greater judicial burden than a rural area.

Although Cabell and Kanawha counties are primarily urban, both have rural population and many of the fifty-three other counties have urban population. It is highly improbable that necessary access to the offices of a courthouse lessens as the population increases. The opposite is more logical if population were the only test.

That speculation notwithstanding, it is clear that the arbitrary classification contained in Chapter 25, Acts of the Legislature, Regular Session, 1971, which amends Code, 1931, 7-3-2, bears no natural or reasonable relationship to the purpose of the Act and is unconstitutional as violating Article VI, Section 39 of our Constitution.

The act of the County Court of Raleigh County ordering the county offices to remain open on Saturday was, therefore, without authority. The writ of mandamus prayed for by the relator, therefore, is denied.

*Writ denied.*