ST. PAUL, J.
 

 The Judges of the Court of Appeal, First Circuit, acting under Const.
 
 *315
 
 1921, art. 7, § 25, p. 45, have certified to this court the following Question:
 

 “In a municipality of this state, which has never changed its status according to the requirement of Act 136 of 1898, or Act 59 of 1902, and has never been classified under said acts as a city having a population of 5,000 or more; and where it appears under a federal census that it has a population less than 5,000, but it also appears in a private census subsequently taken under an ordinance of the municipality that it has a population exceeding 5,000, but under which it has not been classified as a city (of 5,000 or more) or had its status changed; and, where a vacancy occurs in the office of alderman in such municipality, and the Governor fills this vacancy by appointment under the provisions of Act 236 of 1916, which authorizes him to fill by appointment such vacancies in municipalities having a population of less than 5,000, has the Governor, in such case, acted without authority in making the appointment, and is the commission issued by him to such appointee illegal, and can such appointee be ousted from said office as an usurper or intruder or one unlawfully holding or exercising a public office, under the provisions of section 2593, Revised Statutes of 1870?”
 

 I.
 

 The “facts and circumstances” out of which the question arises are substantially as follows;
 

 About the year 1899, the exact date not being given, the electors of the municipality of Opelousas, parish seat of St. Landry parish, adopted as its charter the provisions of Act 136 of 1S98, p. 224, providing for the “creation and government of municipal corporations throughout the state, etc.,” commonly known as the Lawrason Act. See section 40, page 242.
 

 Section 1 of that act, page 224, provides that—
 

 “Municipal corporations are divided into three classes, viz.: Cities, towns and villages; those having 5,000 inhabitants or more are cities; those having less than 5,000 and more than 1,000 inhabitants are towns; and those having less than 1,000 * * * inhabitants villages. * * *
 
 ”
 

 „ And section 41 of said act, page 243, provides that—
 

 “Existing municipalities shall be classified [by proclamation of the Governor] according to their population, as shown by the United States census of 1890, until the class shall be changed as provided in this act. “ * * ”
 

 Under this section Opelousas was duly classified as a town; its population at tliat time being less than 5,000 'according to the United States census of 1890 and the proclamation issued by the Governor.
 

 Section 8 of said act, page 226, originally provided that—
 

 “Whenever, by a census taken under an act of Congress or of the Legislature, it shall be shown that the population of a city, town or village has increased or diminished so as to take or place such city, town or village out of the class to which theretofore it hath belonged, the municipal authorities thereof shall certify the facts to the Governor, who shall investigate the matter; and if he finds the municipality to be wrongfully classed, he shall issue his proclamation in accordance with the facts, and shall correctly classify it, transmitting a copy of the proclamation to the mayor of such city, town or village.
 
 Such proclamation shall be published and recorded by the municipal authorities of the city, town or village as an ordinance is required to be published and recorded, and shall be conclusive from its issuance of the matter determined by it, until there be a new classification under the provisions of this act."
 
 (Italics ours.)
 

 No change in the status of Opelousas occurred whilst this section remained unchanged.
 

 In 1902 the Legislature enacted Act 59 of 1902, p. 82, amending and re-enacting that part of said section 8
 
 not italicised above,
 
 so as ■ to read as follows:
 

 “Whenever it shall be made to appear by a census taken by resolution of the board of aldermen of any city, town or village, that such city, town or village, has increased or diminished so as to take or place such city, town or village out of the class to which it has theretofore belonged, the municipal authorities thereof, shall certify the fact to the Governor, duly sworn to by the person employed by such city, town or village, to take such census, [and] the
 
 *317
 
 Governor shall investigate the facts; and if he find the municipality to he -wrongfully classed, he shall issue his proclamation in accordance with the facts, and shall correctly classify it, transmitting a copy of his proclamation to the Mayor of such city, town or village. * * * ”
 

 But that part of section 8
 
 italicized above
 
 was left
 
 unchanged.
 

 And at this point it is proper to remark that by reason of the change thus made by the act of 1902 the United States census is no longer the test of population for the purpose of classifying the municipalities of this state.
 

 However, no change in the status of Opelousas was attempted under the census of 1900; but in 1906 a census was taken under the provisions of the act of 1902, which showed that the municipality then had a population in excess of 5,000, and the Governor issued in due course a proclamation declaring that the town of Opelousas should be classed as a city from and after the date thereof (June 20, 1906).
 

 But this proclamation was never “published and recorded” as required by the statute, and hence never went into effect. Simar v. Town of Iota, 149 La. 332, 89 So. 22. Nor has any attempt been made since then to have Opelousas classed as a city; so that it is still classified as a
 
 toivn,
 
 “having less than 5,000 and more than 1,000 inhabitants.”
 

 In 1912 the Legislature passed Act 112 of 1912, p. 133, which provides that—
 

 “In the event of a vacancy being caused by death, resignation, or removal, or otherwise of any officer of the state of Louisiana, of any parish -of the state, any district of the state or any subdivision of the state, same shall be filled by election, provided that the said office is, by law, made elective by the people, and further provided that the unexpired term is for a longer period than one year. * * * ”
 

 But in 1916 the Legislature passed Act 236 of 1916, pp. 505, 506, which provides that—
 

 “In case there shall occur a vacancy in the ■office of coroner, justice of the peace, constable, police juror or member of the parish school board, members of boards of aldermen of municipalities having a population of less than 5,000, whether the same may be created by death, resignation or otherwise the Governor of the state of Louisiana is hereby authorized and empowered to fill such vacancy for the remainder of the unexpired term by appointment. * * * ”
 

 Early in 1923 the town council of Opelousas authorized a census to be taken, which census was completed February 28, 1923, and showed an actual population of more than 5,000 (viz. 5,918). But the result of this census was never certified to the Governor by the municipal authorities as required by the act of 1902, nor did the Governor ever issue any proclamation “correctly classifying” the municipality or changing its status from that of a
 
 to'iim
 
 “having less than 5,000 and more than 1,000 inhabitants” to that of a
 
 city
 
 “having 5,000 inhabitants or more” ; on the contrary, the census taker had not even sworn to the correctness of said census, as required by the act of 1902, until June 21, 1924.
 

 On June 10, 1924, H. D. Lacarde, Sr., was elected alderman at large at the regular municipal election. He died on June 19, 1924, before taking office, thus leaving a vacancy to be filled for a full term (more than one year).
 

 On July 8, 1924, the Governor appointed to said vacancy Frank J. Dietlein (the defendant) who assumed the office. And the district attorney then brought this action to oust him therefrom, as being an usurper and intruder, etc.
 

 II.
 

 Act 59 of 1902. p. 82, provides that the proclamation issued by the Governor, classifying a municipality as a city, town, or village, when published and recorded,
 
 “shall be conclusive *
 
 * *
 
 of the matter determined by it"
 
 until there be a new classification made according to law.
 

 But the only “matter determined” by the
 
 *319
 
 proclamation is the one single question of
 
 fact,
 
 whether the municipality has “5,.000 inhabitants or more.” or “less than 5,000 and more than 1,000 inhabitants,” or “less than 1.000 inhabitants.” For that is the only matter which the Governor is authorized to investigate and determine; thus, the Governor “shall investigate the facts; and * * * shall issue his proclamation in accordance with the facts. * * * ” Act 59 of 1902.
 

 Hence the matter of which the Governor’s proclamation
 
 “shall he eoncUisive”
 
 is the fact that the population of the municipality is “more than 5,000,” or “less than 5,000 and more than 1,000,” or “less than 1,000.”
 

 And since the law says that this finding of fact by the Governor
 
 shall he eoncUisive,
 
 it follows that no evidence can be received to contradict it upon the political status of a municipality with reference to its population.
 

 Which therefore answers the question whether the Governor acted within his authority in making the appointment herein complained of by the district attorney; since
 
 for all governmental purposes
 
 Opelousas is a
 
 town
 
 “having less than 5,000 and more than 1.000 inhabitants.”
 

 And were it otherwise, our laws would be in a chaotic condition, for no one could know at any given moment what laws (based on population) might or might not apply in or to any particular municipality, since even a single birth or death might introduce or abrogate a law.
 

 III.
 

 In the above we see nothing which conflicts with the ruling of this court in McFarlain v. Town of Jennings, 106 La. 541, 31 So. 62. In 1900 that municipality had been classified, by proclamation, as a
 
 tenon,
 
 “having less than 5.000 and more than 1,000 inhabitants;” in 1901 the town attempted to exercise one of the
 
 additional powers
 
 conferred on the may- or and alderman of “cities and towns having more than 2,000 inhabitants” by section 17 of said Act 136 of 1898, pp. 233, 234; and, for the purpose of showing that the town had the
 
 additional authority
 
 so conferred, there was offered in evidence a census taken under authority of the town council showing a population slightly in excess of 2,000.
 

 This court said:
 

 “The authority of the Governor, it will be observed, is confined to
 
 classification
 
 of these corporations into cities, towns, and villages. The law contemplates, evidently,
 
 classifications
 
 by the executive based upon the number required to constitute a city, town, or village, but no reference is made in the statute to any other
 
 classification
 
 by the executive, or to ascertaining any other number, except those needful to establish classification of the corporation into a village, town, or city.
 

 “Yet, without regard to classification by the Governor, certain powers are delegated to a designated municipality when the number of its members exceed 2000. * * * But the statute does not expressly authorize and direct how to find out and determine how many persons are within the town when it seeks to enforce powers delegated to towns of more than 2000 inhabitants. * * *
 

 “As the law reads at present, it contains no reference
 
 to
 
 a census, as relates to the special power in question, and we take it that without a special enactment the [federal] census is not exclusive of all other methods of ascertaining the number of members of a corporation. * * *
 

 “There must he an organised method followed hy the municipality in determining the number. *
 
 * * [Italics ours.]”
 

 It is apparent at" once that in the foregoing there is nothing which can be construed as holding that the Governor’s proclamation attesting that, for governmental purposes, the population of the town of Jennings was “less than 5,000 and more than 1,000,” might be
 
 contradicted
 
 by an enumeration taken for the purpose of showing merely that its population
 
 exceeded
 
 2,000.
 

 Answer.
 

 Our answer to the judges of the Court of Appeal is that the Governor acted
 
 within
 
 his
 
 *321
 
 authority in making the appointment; that his appointee
 
 cannot
 
 be ousted from said office as an usurper, or intruder, or as one unlawfully holding or exercising a public office.