ELMER BROYLES, Administrator, Appellee, v. MAHASKA COUNTY, Appellant.

No. 41077.

NOVEMBER 17, 1931.

Arlo W. Palmer, for appellant.

David S. David and McCoy & McCoy, for appellee.

ALBERT, J.—The facts are stipulated in the record that John W. Broyles died on the 19th day of January, 1930, and his administrator brings this action as a substitute plaintiff, action having originally been instituted by John W. Broyles as plaintiff. The real facts are as follows:

Oskaloosa township embraces the incorporated limits of the city of Oskaloosa. At the November election, 1924, John W. Broyles was elected to the office of constable from said Oskaloosa township and qualified as provided by law. He served as such constable for the years 1925 and 1926. At the November election, 1926, he was re-elected to said office, qualified and served for the years 1927 and 1928. He received no salary from Mahaska county for such services, although he acted as such officer and performed the duties of his office for the said four and one-half years. He claims compensation for the four and one-half years, less a credit of $400 paid thereon as hereinafter referred to, from January 1, 1929, to July 1, 1929.

The board of supervisors made no allowance for retention of civil fees as provided by Section 10639, but he received fees from the county in criminal cases where the county was liable, and fees in civil cases, and fees in criminal cases where the defendant paid the costs, and fees as follows: $308.15; and during these four years he received fees in criminal cases where the defendant either pleaded guilty or was found guilty and paid the costs to the justice of the peace in the amount of $165.50. From another justice in civil cases he received $29.55. These fees he did not make an accounting of or report to the county but retained the same.

He filed with the county auditor of Mahaska county a bill for four and one-half years' service as constable at $800 a year, making a total of $3,600.00, of which amount he has been paid by the county the sum of $400 as aforesaid.

It was further stipulated that the census taken by the State of Iowa for the year 1925 showed the population of Oskaloosa to be 10,331. It is further stipulated that a book was issued by the State entitled "Census of Iowa, 1925," and the same bore a certificate of the secretary of state certifying that this volume was the census of Iowa for 1925. This certificate bore date February 1, 1926, and at this point the question is raised as to when it was officially determined what the census of the State of Iowa was in 1925.

We turn to the code for information. This subject is dealt with in Chapter 26, Code, 1924, and provides that the executive council has charge of the same. Section 421 provides that:

"The executive council shall cause abstracts or compilations of said census to be prepared and recorded by the secretary of state, * * * . Said secretary shall attach to said record a certificate, dated and signed by him, to the effect that said record constitutes a true compilation of said census."

Section 423 provides that:

"Said council shall cause said compiled census and certificate to be published in a book to be known as the 'Census of Iowa.' "

Sections 424, 425, and 426 make provisions for the making effective the census taken by the United States government.

Section 428 reads as follows:

"Said certified census records in the office of the secretary of state, and said authorized publications, including the certificates attached thereto, shall be competent evidence of all matters therein contained."

Section 429: "Whenever the population of any county, city, or town is referred to in any law of this state, it shall be determined by the last certified, or certified and published, official census, whether the same be a state or national census, unless otherwise provided."

It is apparent from these provisions of the code that it was the intent of the legislature to fix a time when said census report should be effective. Such things are matters which courts can not determine, as they vary from time to time with the change in population, and it was the evident intent of the legislature, as shown by the requirements in these sections, that the publication of this census was to be under the certificate of the secretary of state which must be dated, and it must therefore follow that the date of the certificate is the day on which the census becomes effective.

As applied to this case, the evidence shows this certificate was dated February 1, 1926. It must be held, therefore, that the new 1925 census was not effective until the last-named date, and prior to that, the city of Oskaloosa had, in law, a population of less than 10,000. This is in line with the holdings in other

348

states. As throwing light on this question see State v. Smith, 270 Pac. (Wash.) 306; Holcomb v. Spikes, 232 S. W. (Texas) 891; Wolfe v. City of Moorhead, 107 N. W. (Minn.) 728; State v. Brooks, 109 Pac. (Wash.) 211.

When said date is officially determined, it does not relate back and give the fact force as of the date of which the census was taken. Lewis v. Lackawanna County, 50 Atl. (Pa.) 162.

We must hold, therefore, that if plaintiff is entitled to recover anything, no recovery can be had for such services prior to February 1, 1926.

█ Serious contention is made on the part of the defendant herein that the plaintiff was not entitled to specific compensation from the county for his services as constable. The section of the statute under consideration in this case is 10639, Code, 1924 which reads as follows:

"Accounting for fees—compensation. Justices of the peace and constables in townships having a population of more than twelve thousand shall pay into the county treasury all criminal fees collected in each year.

"Justices of the peace and constables in townships having a population of under twelve thousand shall pay into the county treasury all fees collected each year in excess of the following sums:

"1. In townships having a population of four thousand and under twelve thousand, justices, eight hundred dollars; constables, six hundred dollars.

"2. In all townships having a population of under four thousand, justices, six hundred dollars; constables, five hundred dollars.

"In townships having a population of ten thousand or more, justices of the peace and constables shall receive in full compensation for their services performed in criminal cases during the year, the following sums which shall be paid quarterly out of the county treasury.

"1. In townships having a population of forty thousand or more, justices, eighteen hundred dollars; constables, fifteen hundred dollars.

"2. In townships having a population of twenty-eight

thousand or more, justices, fifteen hundred dollars; constables, twelve hundred dollars.

"3. In townships having a population of twenty thousand and under twenty-eight thousand, justices, twelve hundred dollars, constables, one thousand dollars.

"4. In townships having a population of ten thousand and under twenty thousand, justices, one thousand dollars; constables, eight hundred dollars.

, "Justices and constables in all townships having a population of ten thousand and over shall retain such civil fees as may be allowed by the board of supervisors, not to exceed five hundred dollars per annum, for expenses of their offices actually incurred, and shall pay into the county treasury all the balance of the civil fees collected by them."

Analyzing this section, so far as the question here is concerned, the first provision is that a constable in a township having a population of more than 12,000 shall pay into the county treasury all criminal fees collected within each year. Under subsequent provisions of the above-quoted section (second subdivision 4) such constable would receive as his compensation from the county, $800 per year.

Returning now to the second paragraph, subdivision of said section, if the population is under twelve thousand, the constable must pay into the county treasury all of the fees collected in each year in excess of the following sums:

1. In townships having a population of four thousand and under twelve, constables $600. Under this section it appears that the constable is entitled to retain $600 of the fees collected by him in the instant case, yet when we turn to the last paragraph of the above section, it is provided that when the population is ten thousand or over, he shall retain civil fees that may be allowed by the board of supervisors, not exceeding $500, and shall pay into the county treasury all of the balance of the civil fees collected by him.

Herein lies the conflict between these provisions of the statute. If we attempt to say that this statute, aside from the last paragraph thereof, deals wholly with criminal fees, we are then confronted with the anomalous situation that in one sec-

tion of the statute a constable is entitled to retain $600 of the criminal fees, and in a subsequent paragraph in the same section he is entitled to a compensation to be paid out of the county treasury in the sum of $800. This, in effect, would make the compensation of such constable $1,400 a year. It is quite apparent that the legislature had no such intent. The question is, what construction would be put upon this section of the statute to avoid this apparent conflict? This situation might be met by saying that the $600 which the constable is entitled to retain from the fees collected by him applies only to civil fees, and the $800 is compensation for services in all criminal matters. Thus the conflict would be avoided. But if we attempt to do this, we are confronted with the provisions of the last paragraph of the above-quoted statute under which, in the present case (the board of supervisors not having allowed the constable anything for expenses actually incurred), it was the duty of the constable to pay into the county treasury all of the balance of the civil fees collected by him.

A literal construction of this last paragraph would therefore result in the constable's receiving a compensation of $800 from the county, he being compelled to turn in, not the excess over $600, but all of the fees collected by him. We are disposed to think this last section of the statute controlling, and the compensation of this constable must be figured on the basis of $800 a year, and all fees collected by him are chargeable against him and should be turned into the county treasury.

This seems to be the only solution of the question before us. We reach the conclusion, therefore, that the total compensation which this constable was entitled to receive was $800 per year, and all fees collected by him were to be turned over to the county. This salary of $800 per year, however, under the former part of this opinion, should not cover the year 1925 or the first month of 1926. As nearly as we are able to collect from the uncertainty of the figures presented to us, the amount in the first instance due the plaintiff is $2333.34. Deducting the fees collected by him after February 1, 1926, which he should have returned to the county, (which according to the figures amounted to $784.84) the balance due him would be $1,548.59. Averaging the time, the interest allowed thereon would be

$232.30, making a net amount due the plaintiff of $1,780.89, which will draw interest at six per cent from the date of the filing of this opinion.

The defendant contended as one of its defenses herein that the plaintiff was estopped from claiming specific compensation because he continued to transact business under the old fee system and retained the fees collected by him. We do not think there is anything in this contention because from the first of January, 1925, up until the first of February, 1926, when the official announcement was made of the population of the State, no one knew that by reason of the increase in population this township passed from a fee basis to a compensation basis.

Further than that, this salary being fixed by statute, it is a liquidated claim, and the payment of a portion of the amount due would not work an estoppel against the plaintiff. Rea v. Owens, 37 Iowa 262; Cushman v. Washington Co., 45 Iowa 255; Sanford v. Lee Co., 49 Iowa 148; Wilson v. Palo Alto Co., 65 Iowa 18; Walston v. Calkins Co., 119 Iowa 150; Resner v. Carroll Co., 126 Iowa 423; Cartan & Jeffrey v. Tackaberry Co., 139 Iowa 586; Barr v. Clinton Bridge Works, 179 Iowa 702; City of Rushville v. Thomas, 165 N. E. (Ind.) 341; State v. Hamilton, 260 S. W. (Mo.) 466; Section 10639, Code, 1927.

With the modifications hereinbefore referred to reducing the amount of the judgment in this case it is—Modified and affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF and WAGNER, JJ., concur.