DORIS CATO, DELWIN CATO *v.* JACK CHADDOCK, TRUSTEE OF KNIGHT TOWNSHIP, VANDERBURGH COUNTY, INDIANA

[No. 1-277A15. Filed February 21, 1978. Rehearing denied March 28, 1978. Transfer denied May 23, 1978.]

*John D. Clouse*, of Evansville, *Barry L. Standley*, of Evansville, for appellants.

*Thomas H. Terrell, Lacey, Terrell, Annakin, Heldt & Baugh*, of Evansville, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Plaintiffs-appellants Delwin and Doris Cato appeal from a judgment in favor of defendant-appellee Jack Chaddock, Trustee of Knight Township, Vanderburgh County, Indiana, wherein the Catos' claim for salaries due them was denied.

## FACTS

Delwin Cato (Delwin) was a Justice of the Peace for Knight Township in Vanderburgh County, and Doris Cato (Doris) was the clerk for the Justice of the Peace of Knight Township. The salary of the Justice of the Peace and his clerk in Knight Township was dependent upon population, and, therefore, was greater if the population for that township rose above 60,000.[1]

---

1. See Acts 1957, ch. 322, § 1, p. 960, as *amended by* Acts 1961, ch. 246, § 1, p. 570, as *amended by* Acts 1971, P.L. 440, §1 p. 2066 (Formerly found in IC 1971, 33-11-18-1 (Burns Code Ed.), and *repealed by* Acts 1975, P.L. 305, § 54, p. 1702).

The population of Knight Township, as determined by the 1960 U.S. Decennial Census, was less than 60,000. The 1970 U.S. Decennial Census determined the population of Knight Township to be greater than 60,000. For the period from April 1, 1970 to February 18, 1971 both Delwin and Doris were paid in accordance with the salary schedule for townships having a population of less than 60,000.

The United States Decennial Census for 1970 was physically counted over a period of several months in the year of 1970, but the figures were adjusted to reflect the population on April 1, 1970. The United States Code (13 U.S.C. § 141(a) and (b) (1970) and 2 U.S.C. § 2a (1970)) provides that the Census Bureau figures are first reported by the Secretary of Commerce to the President of the United States, who in turn officially reports such information to the Congress of the United States, which in turn notifies the Chief Executives of each of the 50 states. The Governor of Indiana was officially notified of the results of the 1970 Decennial Census sometime between January 21, 1971 and February 18, 1971. On February 18, 1971 the Governor of the State of Indiana officially proclaimed the 1970 Decennial Census figures for the State of Indiana to be in effect.

The parties agreed that if Delwin and Doris were not entitled to salary increases based upon increased population until February 18, 1971, then they could recover nothing by way of their complaint, but if they were entitled to salary increases based upon increased population as of April 1, 1970, then they would be entitled to judgment in the following amounts:

| | |
|---|---|
| Doris Cato | $900.00. |
| Delwin Cato | $750.00. |

### ISSUE

When the 1970 Decennial Census of the United States reflected a change in the population of a township in Indiana, what was the effective date for a change in the respective salaries of a Justice of the Peace and his clerk when their salaries were dependent, in part, upon the population of their township.

## DISCUSSION AND DECISION

Delwin and Doris contend that their salaries should have been increased on April 1, 1970, or rather, that, after the final results of the 1970 Decennial Census had been determined, their respective salary increases should have been given retroactive effect to April 1, 1970, because that is the date which is reflected in the official population count of the 1970 Decennial Census. We do not agree that the Cato's increase in salary should have been given retroactive effect.

In 1970 the Bureau of the Census took several months to investigate and to compile the information from which the official population count was formulated. The investigation and compilation phases continued well into the fall of 1970. Periodic preliminary reports were issued, but no official final reports were issued until early in 1971.

The April 1, 1970 date, which Delwin and Doris contend should mark the commencement of their respective salary increases, was an artificial date which was arbitrarily denominated by statute to be the official census date. In order for such date to be used administratively for the purpose of increasing the salaries of certain statutorily designated workers, such salary increases would have to be made retroactive. Likewise, it should be noted that if the population in a local governmental unit had decreased, the worker who had been paid in accordance with the higher population count would be required to refund the amount by which his salary had been retroactively reduced. The administrative difficulties which would occur in applying such a retroactive law are obvious.

In order to avoid statewide confusion and to ensure the uniform application of laws which attach significance to increases and decreases in population, a specific day must be selected upon which such changes in population can be considered to be effective. At the time the case at bar was brought to trial 13 U.S.C. § 141(a) and (b) (1970), provided:

"§141. Population, unemployment, and housing.

(a) The Secretary shall, in the year 1960 and every ten years thereafter, take a census of population, unemployment, and housing (including utilities and equipment) as of the first day of April, which shall be known as the census date.

(b) *The tabulation of total population by States as required for the apportionment of Representatives shall be completed within eight months of the census date and reported by the secretary to the President of the United States.* (Aug. 31, 1954, ch. 1158, 68 Stat. 1019; Aug. 28, 1957, Pub. L. 85-207, §9, 71 Stat. 483.)" (Our emphasis)

After he receives the decennial census report from the Secretary of Commerce, the President transmits the information to Congress, which in turn reports such information to the chief executive of each state, as provided in 2 U.S.C. §2a(a) and (b) (1970), as follows:

"§2a. Reapportionment of Representatives; time and manner; existing decennial census figures as basis; statement by President; duty of clerk.

(a) On the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress and of each fifth Congress thereafter, *the President shall transmit to the Congress a statement showing the whole number of persons in each State,* excluding Indians not taxed, as ascertained under the seventeenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives by the method known as the method of equal proportions, no State to receive less than one Member.

(b) . . . It shall be the duty of the Clerk of the House of Representatives, within fifteen calendar days after the receipt of such statement, *to send to the executive of each State a certificate of the number of Representatives to which such State is entitled under this section. . . .*" (Our emphasis)

In [1971] Ind. Att'y Gen. Op., at 1, our Attorney General issued the following opinion:

"Dear Governor Whitcomb:

*This is in response to your question as to when the State of Indiana is officially notified of the results of the United States Decennial Census of 1970, because there are various laws which are keyed to the decennial census figures.*

* * *

The United States Code (13 U.S.C.A. § 141a and b, and 2 U.S.C.A. §2a) provides that the Census Bureau figures are first reported by the Secretary of Commerce to the President of the United States, who in turn officially reports such information to the Congress of the United States, which in turn notifies the Chief Executives of each of the 50 states.

* * *

Therefore, it is my official opinion that the first official notification which you will receive as Governor of Indiana concerning the results of the 1970 Decennial Census pertaining to Indiana will be the certificate which the Clerk of the United States House of Representatives will send you within 15 days after he has received that information from the President of the United States.

Since Congress convenes on January 21, 1971, and since federal law requires the President to submit that information to Congress 'on the first day, or within one week thereafter,' and the Clerk of the United States House of Representatives is required to transmit the same information to the Governors within 15 days thereafter, *it would be my estimate that you should receive the official notification of the Decennial Census figures for Indiana sometime during the first two weeks of February, 1971.*" (Our emphasis)

After he was notified by Congress concerning the official population figures for Indiana, which were taken from the official 1970 Decennial Census report, our Governor by proclamation declared those census figures to be effective in Indiana as of February 18, 1971. We hold that the results of the 1970 Decennial Census became official and effective in Indiana on February 18, 1971 when our Governor declared them to be such.

It is correct that the Governor has no specific statutory duty which requires him to declare the census results to be effective in Indiana. However, IND. CONST. art. V, § 16 requires that the Governor "take care that the laws be faithfully executed." It is the Governor's duty to see that the laws are executed fully and uniformly.

Many laws, including those in the case at bar, attached significance to the results of the 1970 U.S. Decennial Census. Our Governor was acting under his constitutional obligation to fully and uniformly execute the laws of Indiana when he declared the census results to be effective on a certain day, thereby insuring the uniform application of those census results to the laws to which they pertained throughout the state.

The evidence in the case at bar shows that Delwin and Doris received pay increases which became effective in January, 1971, although the Governor did not declare the 1970 Decennial Census to be effective in Indiana until February 18, 1971. Therefore, no additional compensation is due to Delwin and Doris. Since the Trustee of Knight Township did not claim that a refund was due the township, we have not considered that question.

Judgment affirmed.

Robertson, C.J. and Garrard, J., participating by designation, concur.

NOTE—Reported at 373 N.E.2d 172.