294 S.E.2d 103

**Ruth A. DONALDSON, Magistrate, etc., et al.**

v.

**Glen B. GAINER, Jr., Auditor, et al.**

**No. 15450.**

Supreme Court of Appeals of West Virginia.

June 30, 1982.

---

LaVerne Sweeney, Grafton, for relators.

Chauncey H. Browning, Jr., Atty. Gen., and Fredric J. George, Deputy Atty. Gen., Charleston, for respondents.

McGRAW, Justice:

This is an original proceeding in mandamus. The petitioners are nineteen magistrates, twenty-two magistrate assistants, ten magistrate court clerks, and four magistrate court deputy clerks from eleven

West Virginia counties.[1] The respondents are Glen B. Gainer, Jr., Auditor of the State of West Virginia, and Paul Crabtree, Administrative Director of the Supreme Court of Appeals of West Virginia. The petitioners seek a writ of mandamus to compel the respondents to pay them increased salaries based upon population changes for their respective counties as indicated by the 1980 decennial census. We find that the Legislature intended population based increases in the petitioners' salaries and maximum salary levels, as established by the 1980 decennial census, to become effective July 1, 1981, and grant the requested relief in part.

The West Virginia magistrate court system was constitutionally mandated by the Judicial Reorganization Amendment of 1974. W.Va.Const. art. 8, § 10. The amendment required the Legislature to establish a magistrate court or courts in each county of the State, and authorized the Legislature to determine the number of magistrates for each court, and the salary magistrates were to be paid. *Id.*

The Legislature responded to this mandate by the enactment, in 1976, of article one of chapter fifty of the West Virginia Code. Under the provisions of article one, both the number of magistrates per county and the salaries earned by magistrates and magistrate support staff are determined by reference to county population "as determined by the last preceding census taken under authority of the United States government." W.Va.Code § 50–1–2 [1976]. *See also* W.Va.Code §§ 50–1–3; 50–1–8; 50–1–9 [1976].

The most recent census was undertaken by the federal government in 1980. The official effective date of the 1980 decennial census is April 1, 1980. 13 U.S.C. § 141(a) (1976). However, tabulation of census data is not required to be completed until nine months after the official census date, 13 U.S.C. § 141(b) (1976), and basic tabulations of population figures are not required to be transmitted to the states until one year after the decennial census date. 13 U.S.C. § 141(c) (1976). Basic population counts for West Virginia were issued by the Census Bureau in March of 1981.

On February 9, 1981, respondent Crabtree sent a memorandum to all members of the sixty-fifth Legislature in response to inquiries he had received from individual legislators regarding when 1980 census figures might be applied to the salaries of magistrates, magistrate court clerks, deputy clerks and assistants. In this memorandum, respondent Crabtree quoted the language of W.Va.Code § 50–1–2, and indicated that, in his opinion, the date when 1980 census figures should be applied was a matter for legislative determination. Using the best population data then available, respondent Crabtree computed the changes that would occur if the 1980 census were to be applied, and advised the Legislature of the projected additional costs such changes would effect in the judiciary budget for the fiscal year beginning July 1, 1981.

On April 11, 1981 the Legislature concluded action on amendments to W.Va. Code §§ 50–1–3, 50–1–8 and 50–1–9, providing increased compensation for magistrates, magistrate court clerks, magistrate assistants, and magistrate court deputy clerks, and providing for salaries and maximum salary levels to be paid on a population basis, effective July 1, 1981. 1981 W.Va. Acts ch. 144. On May 14, 1981, the Legislature appropriated funds for the judiciary budget for the fiscal year beginning July 1, 1981, which respondent Crabtree contends did not include sufficient funds for increased magistrate and support staff salaries as a result of population changes revealed by the 1980 decennial census. *See* 1981 W.Va. Acts ch. 1 (First Extraordinary Session).

On July 22, 1981, counsel for the petitioners wrote to Glen B. Gainer, Auditor of State of West Virginia, requesting increases in salaries effective from January 1, 1981, based upon increases in county populations. The auditor responded, by letter

---

**1.** The counties are: Berkeley, Boone, Brooke, Grant, Jefferson, Lincoln, Morgan, Preston, Tyler, Upshur and Wayne.

dated July 27, 1981, that he could not comply with the petitioners' request because he had no authority to increase salaries of members of the judicial branch of government absent a requisition for such increases submitted by the Administrative Director of the Supreme Court of Appeals.

Although not supported by evidence of record, the petitioners represent in their brief that they next presented their request for increased salaries to Paul Crabtree, Administrative Director of the Supreme Court of Appeals, and that respondent Crabtree replied by indicating that the Supreme Court of Appeals in its administrative capacity was responsible for magistrate pay increases, and that the Chief Justice was the administrative head of the Court. On August 19, 1981, counsel for the petitioners wrote to then Chief Justice Sam R. Harshbarger and communicated their request. Chief Justice Harshbarger, however, declined to intervene in the controversy.

Subsequently, on November 24, 1981, the petitioners filed the petition herein, requesting a writ of mandamus to compel the respondents to pay them in conformity with the population of their respective counties based on the 1980 census. The respondents named in the petition were Glen B. Gainer, Auditor of the State of West Virginia, Paul Crabtree, Administrative Director of the Supreme Court of Appeals of West Virginia, and the five members of this Court. On January 15, 1982, after a determination that the members of this Court were inappropriate parties to the proceeding, a rule to show cause was issued, returnable against respondents Gainer and Crabtree.

### I.

█ The petitioners originally requested salary increases effective from January 1, 1981. However, they now argue that their salaries should be increased effective from April 1, 1980, the official 1980 decennial census date. 13 U.S.C. § 141 (1976). We do not agree.

In determining when the Legislature intended census figures to be applied to magistrate and support staff salaries, we look first to the language of the statute in issue. W.Va.Code § 50–1–2 provides that for the purposes of article one of chapter fifty:

[T]he population of each county shall be considered to be the population as determined by the last preceding census taken under authority of the United States government. No change in the number of magistrates caused by publication of more recent such census figures shall be effective until the next regular election for such office occurring after the year of such publication.

Although this statutory language gives no explicit directions regarding when the most recent census figures should be applied to determine the salaries of magistrates and the maximum salary levels of magistrate support staff, we believe the reference to "publication" of census figures contained in the last sentence of W.Va.Code § 50–1–2 sufficiently indicates the intent of the Legislature that the year of publication of census figures is a meaningful date for purposes of article one of chapter fifty, and provides a starting point for our inquiry.

Courts in many jurisdictions have addressed the issue of when census figures are to be applied pursuant to a statute fixing the compensation of public officers, with widely varying results. *See Annot.*, 43 A.L.R.2d 1353 (1955). It has been held that the census is effective from the date of official publication or announcement, *State ex rel. Martin v. Ivins*, 59 N.J.L. 364, 36 A. 93 (1896); *Forde v. Owens*, 160 S.C. 168, 158 S.E. 147 (1931); *State ex rel. Nedreloe v. Kennard*, 38 N.D. 612, 166 N.W. 514 (1918), the date of legal ascertainment, *Commonwealth ex rel. Woodring v. Walter*, 274 Pa. 553, 118 A. 510 (1922), the date when the census becomes available, *Carter v. Huett*, 303 Mo. 194, 259 S.W. 1057 (1924), the date of preliminary publication or announcement, *Excise Board v. Lowden*, 189 Okla. 286, 116 P.2d 700 (1941); *Garrett v. Anderson*, 144 S.W.2d 971 (Tex.Civ.App. 1940), the date "as of" which the census is taken, *Twin Falls ex rel. Cannon v. Koehler*, 63 Idaho 562, 123 P.2d 715 (1942); *Underwood v. Hickman*, 162 Tenn. 689, 39 S.W.2d 1034 (1931); *State ex rel. Jordan v.*

*Dehart,* 15 Wash.2d 551, 131 P.2d 156 (1942); *Puterbaugh v. Wadham,* 162 Cal. 611, 123 P. 804 (1912), the date of certification or transmission by the secretary of state, *Broyles v. Mahaska County,* 213 Iowa 345, 239 N.W. 1 (1931), and the date of proclamation by the governor. *Cato v. Chaddock,* 373 N.E.2d 172 (Ind.1978); *State ex rel. Garland v. Dietland,* 158 La. 314, 104 So. 56 (1925).

With regard to the claim made by the petitioners, we find persuasive the reasoning of the Court of Appeals of Indiana in *Cato v. Chaddock, supra.* In *Cato* a justice of the peace and his clerk brought an action claiming they were entitled to increased salaries by reason of an increase in the population of their township as revealed by the 1970 United States Decennial Census. They argued that their salaries should be increased effective April 1, 1970, the date which is reflected in the official population count of the census. The Indiana Court of Appeals rejected this argument stating:

> The April 1, 1970 date ... was an artificial date which was arbitrarily denominated by statute to be the official census date. In order for such date to be used administratively for the purpose of increasing salaries of certain statutorily designated workers, such salary increases would have to be made retroactive. Likewise, it should be noted that if the population in a local government unit had decreased, the worker who had been paid in accordance with the higher population count would be required to refund the amount by which his salary had been retroactively reduced. The administrative difficulties which would occur in applying such a retroactive law are obvious. 373 N.E. at 173–74.

This Court also recognizes the administrative difficulties inherent in the petitioners' contention that the official census date should be regarded as the effective date of population based salary increases for magistrates and staff.

Moreover, if the Legislature intended census totals to be applied to magistrate salaries and maximum salary levels of magistrate support staff "as of" the official census date, it is reasonable to assume that they would expressly have so provided. We reach this conclusion by a reading of W.Va.Code § 8–1–3 [1969], which classifies all West Virginia municipal corporations into four classes according to population. This statute, enacted prior to establishment of the magistrate court system, expressly states: "Transition from one to another class shall occur automatically when the requisite population classification has been met, *effective as of the effective date of the census ...."* (Emphasis added). The absence of a similar provision in W.Va.Code § 50–1–2 is evidence that the Legislature did not intend the "effective" or "official" date of the census to be applied to salaries of magistrates and maximum salary levels of magistrate support staff.

We believe that in determining when the latest census figures should be applied to magistrate and support staff salaries, we should consider the legislative process through which such salaries are funded. The salaries of magistrates and their support staff are funded by appropriations for the judicial department of government, approved by the Legislature for "the next ensuing fiscal year," [2] and paid out of the general revenue fund. *See generally* W.Va.Const.art. 6, § 51. Under this constitutional arrangement, the budget bill is necessarily drawn up in advance of the period to which it applies. Thus, the budget bill for the fiscal year beginning July 1, 1979, was passed by the Legislature April 11, 1979, 1979 W.Va. Acts ch. 1 (First Extraordinary Session), and the budget bill for the fiscal year beginning July 1, 1980, was passed March 11, 1980. 1980 W.Va. Acts ch. 3. Since the budget bill is drawn up in advance of the next ensuing fiscal year, population changes documented by the 1980 decennial census, which were not tabulated and reported until March of 1981, could not be considered for the purpose of

---

**2.** W.Va.Code § 2–2–4 (1979 Replacement Vol.) provides, in pertinent part: "The fiscal year for

the State ... shall begin on the first day of July and end on the thirtieth day of June."

appropriating funds to increase the salaries of affected magistrates and the maximum salary levels of magistrate support staff, until the preparation of the budget for the fiscal year beginning July 1, 1981, passed by the Legislature May 14, 1981. 1981 W.Va. Acts ch. 1 (First Extraordinary Session).

We do not believe that the Legislature, which is intimately familiar with the budget process, could have intended by the enactment of W.Va.Code § 50-1-2, to increase the salaries of magistrates and the maximum salary levels of magistrate support staff prior to the time when such salary increases could be properly funded. We therefore conclude that pursuant to W.Va.Code § 50-1-2, increases in salaries and maximum salary levels for magistrates and magistrate support staff, as a result of increases in county population documented by the 1980 decennial census, became effective July 1, 1981, the beginning of the next ensuing fiscal year after the census figures were tabulated and published.[3]

The determination that 1980 census counts are to be applied effective July 1, 1981, to the statutes prescribing the salaries and maximum salary levels of magistrates and magistrate support staff, does not, however, entitle all of the petitioners to the relief requested. Rather, only those petitioners who are magistrates and thus have their salary established by statute, see W.Va.Code § 50-1-3 (Cum.Supp.1981), are entitled to an order compelling the respondents to pay them increased salaries based on the 1980 decennial census. The remainder of the petitioners who are magistrate court clerks, magistrate assistants and magistrate court deputy clerks are not entitled to such relief. The salary paid to magistrate court clerks is established by the judge of the circuit court within the maximum limits imposed by statute. W.Va.Code § 50-1-8 (Cum.Supp.1981). The salaries paid to magistrate assistants and magistrate court deputy clerks are established by magistrates within the maxi-

mum limits imposed by statute. W.Va. Code §§ 50-1-9, 50-1-9a (Cum.Supp.1981). The respondents therefore have no duty to act with respect to the salaries of these petitioners until such time as the proper statutory official increases their rate of compensation within the maximum limits imposed by statute.

We recognize and hold that those petitioners who are magistrates are entitled to have their salaries based on 1980 census totals effective July 1, 1981. However, because the Legislature failed to appropriate sufficient funds to pay population based magistrate salary increases for the fiscal year beginning July 1, 1981, the order compelling the respondents to pay magistrate salaries based on the 1980 decennial census shall be applied prospectively, effective July 1, 1982. See W.Va.Const.art. 10, § 3. A procedure through which the petitioners may recover amounts owed to them for the fiscal year beginning July 1, 1981, is found in W.Va.Code § 14-2-1 et seq. (1977 Replacement Vol. & Cum.Supp.1981), wherein the Legislature has created a court of record called the Court of Claims. Pursuant to this statutory procedure, the petitioners should present their claims to the Court of Claims for a determination of the amount owed each claimant. Thereafter, the Court of Claims shall present the approved awards to the Legislature for the appropriation of the requisite funds. See W.Va.Code § 14-2-1 et seq. (1977 Replacement Vol. & Cum.Supp.1981). In this manner, the Legislature itself can fulfill the intent of its enactment to increase magistrate salaries based on the 1980 decennial census effective July 1, 1981. W.Va.Code § 50-1-2.

## II.

In addition to their claim for increased salaries, the petitioners have also raised a constitutional challenge to the system of classification employed by W.Va.Code § 50-1-1 et seq. The petitioners contend

---

**3.** Our conclusion is reinforced by the enactment by the Legislature of the 1981 amendments to W.Va.Code §§ 50-1-3, 50-1-8 and 50-1-9, which provided increased compensation for magistrates, magistrate court clerks, magistrate assistants and magistrate court deputy clerks based on county population effective July 1, 1981. 1981 W.Va. Acts ch. 144.

that the statutory system of classification establishing the rate of compensation for magistrates and magistrate support staff is arbitrary and unreasonable, and bears no rational relationship to the purpose sought to be accomplished in violation of the constitutional guaranty of equal protection of the laws.

■ The Fourteenth Amendment to the Constitution of the United States provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." This same guaranty of equal protection is also inherent in article 6, section 39 of the Constitution of West Virginia, which prohibits "special legislation." *See, e.g., State ex rel. City of Charleston v. Bosley*, 165 W.Va. 332, 268 S.E.2d 590 (1980). Generally, in order for a legislative enactment to be valid under the equal protection clause, it must operate alike on all persons and property similarly situated. The constitutional mandate of equal protec-

tion does not prohibit legislative classification. As long as a statute applies uniformly upon a class, and as long as the classification utilized is neither arbitrary, nor unreasonable, and bears a rational relationship to the purpose of the statute, the statute is not violative of the equal protection clause. *State ex rel. City of Charleston v. Bosley, supra; Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978); *Cimino v. Board of Education*, 158 W.Va. 267, 210 S.E.2d 485 (1974).

As we have already discussed, the statutes which the petitioners challenge establish a system whereby the number of magistrates per county is determined by county population, and the salary paid magistrates and magistrate support staff is determined by the population served by each magistrate. The population served by each magistrate is determined by dividing the county population by the number of magistrates authorized for that county.[4]

4. W.Va.Code § 50–1–2 [1980] provides:

In each county which has less than thirty thousand in population there shall be elected two magistrates; except that in the county of Putnam there shall be elected three magistrates. In each county which has thirty thousand or more in population but less than sixty thousand in population there shall be elected three magistrates; except that in the county of McDowell, there shall be elected four magistrates. In each county which has sixty thousand or more in population but less than one hundred five thousand in population there shall be elected four magistrates; except that in the county of Raleigh there shall be elected five magistrates. In each county which has one hundred five thousand or more in population but less than two hundred thousand in population there shall be elected seven magistrates. In each county which has two hundred thousand or more in population there shall be elected ten magistrates. For the purpose of this article, the population of each county shall be considered to be the population as determined by the last preceding census taken under the authority of the United States government. No change in the number of magistrates caused by the publication of more recent such census figures shall be effective until the next regular election for such office occurring after the year of such publication.

W.Va.Code § 50–1–3 [1981] provides:

The salary of each magistrate shall be paid by the State. Beginning on the first day of July, one thousand nine hundred eighty-one, magistrates who serve less than ten thousand in population shall be paid annual salaries of

fifteen thousand seven hundred fifty dollars; magistrates who serve ten thousand or more in population but less than fifteen thousand in population shall be paid annual salaries of nineteen thousand one hundred twenty-five dollars: Provided, that magistrates in the county of Putnam shall be paid annual salaries of nineteen thousand one hundred twenty-five dollars. Magistrates who serve fifteen thousand or more in population shall be paid annual salaries of twenty-three thousand six hundred twenty-five dollars: Provided, however, that magistrates in the county of Raleigh shall be paid annual salaries of twenty-three thousand six hundred twenty-five dollars. For the purpose of determining the population served by each magistrate, the number of magistrates authorized for each county shall be divided into the population of each county. Magistrates shall be paid once a month.

W.Va.Code § 50–1–8 [1981] provides, in pertinent part:

In each county having three of more magistrates the judge of the circuit court, or the chief judge thereof if there is more than one judge of the circuit court, shall appoint a magistrate court clerk. In all other counties such judge may appoint a magistrate court clerk or may by rule require the duties of the magistrate court clerk to be performed by the clerk of the circuit court, in which event said circuit court clerk shall be entitled to additional compensation in the amount of two thousand five hundred dollars per year. In any county a magistrate court clerk may be appointed prior to the first day of January, one thousand nine hundred seventy-seven.

■ At the outset of our inquiry, we take note that legislative classifications based on population are not *per se* invalid. This Court has specifically approved population based classifications when they are found to be reasonable and rationally related to the statutory purpose involved. *See, e.g., State ex rel. County Court of Cabell County v. Battle,* 147 W.Va. 841, 131 S.E.2d 730 (1965); *see also State ex rel. City of Charleston v. Bosley, supra; Shackleford v. Catlett,* 161 W.Va. 568, 244 S.E.2d 327 (1978); *State ex rel. Taxpayers Protective Ass'n v. Hanks,* 157 W.Va. 350, 201 S.E.2d 304 (1973). However, where a statutory classification based on population bears no rational relationship to the purposes of the statute, such classification is arbitrary, and violates the constitutional guaranty of equal protection. *See generally Annot.,* 96 A.L.R.3d 538 (1980).

The obvious purpose of the statutes in question in this proceeding is to provide an adequate number of magistrates and sup-

The magistrate court clerk shall serve at the will and pleasure of such circuit judge.

Magistrate court clerks shall be paid a monthly salary by the State. Beginning on the first day of July, one thousand nine hundred eighty-one, magistrate court clerks serving magistrates who serve five thousand or less in population shall be paid up to six hundred ninety-eight dollars per month; magistrate court clerks serving magistrates who serve more than five thousand in population but less than ten thousand in population shall be paid up to eight hundred ninety-eight dollars per month; magistrate court clerks serving magistrates who serve more than ten thousand in population but less than fifteen thousand in population shall be paid up to one thousand one hundred fifty-four dollars per month: Provided, however, that the magistrate court clerk in the county of Putnam shall be paid up to one thousand one hundred fifty-four dollars per month; and magistrate court clerks serving magistrates who serve fifteen thousand or more in population shall be paid up to one thousand four hundred ten dollars per month: Provided, however, that the magistrate court clerk in the county of Raleigh shall be paid up to one thousand four hundred ten dollars per month. For the purpose of determining the population served by each magistrate, the number of magistrates authorized for each county shall be divided into the population of each county. The salary of the magistrate court clerk shall be established by the judge of the circuit court, or the chief judge thereof if there is more than one judge of the circuit court, within the limits set forth in this section.

W.Va.Code § 50–1–9 [1981] provides, in pertinent part:

In each county there shall be one magistrate assistant for each magistrate. Each magistrate assistant shall be appointed by the magistrate under whose authority and supervision and at whose will and pleasure he shall serve.

\* \* \* \* \* \*

Magistrate assistants shall be paid a monthly salary by the State. Beginning on the first day of July, one thousand nine hundred eighty-one, magistrate assistants serving magistrates who serve five thousand or less in population shall be paid up to five hundred sixty-seven dollars per month; magistrate assistants serving magistrates who serve more than five thousand in population but less than ten thousand in population shall be paid up to seven hundred five dollars per month; magistrate assistants serving magistrates who serve more than ten thousand in population but less than fifteen thousand in population shall be paid up to eight hundred thirty-four dollars per month: Provided, that magistrate assistants in the county of Putnam shall be paid up to eight hundred thirty-four dollars; and magistrate assistants serving magistrates who serve fifteen thousand or more in population shall be paid up to nine hundred sixty-two dollars per month: Provided, however, that magistrate assistants in the county of Raleigh shall be paid up to nine hundred sixty-two dollars per month. For the purpose of determining the population served by each magistrate, the number of magistrates authorized for each county shall be divided into the population of each county. The salary of the magistrate assistant shall be established by the magistrate within the limits set forth in this section.

W.Va.Code § 50–1–9a [1978] provides, in pertinent part:

Whenever required by work load and upon the recommendation of the judge of the circuit court, or the chief judge thereof if there is more than one judge of the circuit court, the supreme court of appeals may be rule provide for the appointment of magistrate court deputy clerks, not to exceed forty-five in number. Such magistrate court deputy clerks shall be appointed by the judge of the circuit court, or the chief judge thereof if there is more than one judge of the circuit court, with such appointee to serve at his will and pleasure under the immediate supervision of the magistrate court clerk.

\* \* \* \* \* \*

Magistrate court deputy clerks shall be paid a monthly salary by the State. Such salary shall be paid on the same basis and in the same applicable amounts as for magistrate

port personnel to serve the people of each county, and to provide reasonable compensation for the services rendered. The petitioners contend that the population based statutory classifications establishing the salaries of magistrates bear no rational relationship to this purpose. They argue that the method for determining compensation set out in W.Va.Code § 50–1–3 fails to further the purpose of compensating magistrates in a manner corresponding to the amount of work they perform, and is therefore unconstitutional.

W.Va.Code § 50–1–3 creates three classes of magistrates for determining the compensation they receive. Magistrates who serve less than 10,000 in population are paid $15,750 per year. Magistrates who serve 10,000 or more in population, but less than 15,000, are paid $19,125, and magistrates who serve 15,000 or more in population are paid $23,625 per year. W.Va. Code § 50–1–4 (1980 Replacement Vol.) establishes the time magistrates are required to devote to their public duties. The statute divides magistrates into two categories—those who serve 5000 or less in population, and those who serve more than 5000 in population. The statute provides that magistrates in the first category "shall devote such time to [their] public duties as shall be required by rule or regulation of the judge of the circuit court, or the chief judge thereof ...." Magistrates in the second category are required to devote "full time" to their public duties. For practical purposes, W.Va.Code § 50–1–4 divides magistrates into "part-time" and "full time" categories of employment.

West Virginia magistrate courts are required to function twenty-four hours per day. *See generally State v. Mason,* 162 W.Va. 297, 249 S.E.2d 793 (1978). This goal is accomplished in counties having five or more magistrates by rotating night court duty among all the magistrates of the county. In counties having three or four magistrates, night office hours and "on call" night duty are rotated among the magistrates. In counties having two magistrates, one magistrate is always "on call" on a twenty-four hour basis. W.Va. Magistrate Court Rule 4(c).[5] As a result of this arrangement, magistrates in sparsely populated counties, which under the provisions of W.Va.Code § 50–1–2 have fewer magistrates than more populated counties, devote more time to their official duties than their counterparts in counties with larger populations. Yet under the provisions of W.Va.Code § 50–1–3, which establishes salaries based upon county population, those magistrates who devote more time to their duties are actually paid less than magistrates in larger counties who devote less time to their duties.

Exhibit C, attached to the petitioners' brief, is illustrative of this paradox. The exhibit sets out the total hours of official duty for each magistrate in the State for the period of July to December 1981. By dividing the total hours for all magistrates in each county by the number of magistrates in the county, an average of total hours of official duty per magistrate per county is determined. Comparing the total hours of official duty with the salary earned by magistrates in differing counties reveals the substance of the petitioners' complaint. For example, in Kanawha County, which ranks first among the coun-

---

assistants in each county as provided in section nine [§ 50–1–9] of this article.

**5.** W.Va. Magistrate Court Rule 4(c) provides:

(c) Hours Generally

(1) Counties having five or more magistrates shall, on a rotating basis, have a magistrate at night court at, or relatively convenient to, the county jail between the hours of 7:00 p. m. and 8:00 a. m.

(2) Counties having three or four magistrates shall, on a rotating basis, designate an "on call" magistrate who shall keep hours between 4:00 p. m. and 9:00 p. m. and shall be available for the balance of that day until 8:00 a. m. the following morning for all judicial services, exclusive of civil cases.

(3) Counties with two magistrates shall have one magistrate who shall be available and "on call" on a twenty-four-hour-a-day basis. To effect this end, a schedule shall be established by the circuit judge or chief circuit judge, if there be one.

The purpose of this rule is to ensure that magistrates shall be available twenty-four hours a day in every county to deal with criminal matters, and to that end this rule shall apply.

ties of the State in population, the total average hours of official duty per magistrate is approximately 975. On the other hand, in Wyoming County, which ranks twentieth among the counties of the State in population, the total average hours of official duty per magistrate is approximately 1704. Yet under the provisions of W.Va. Code § 50–1–3 [1981] magistrates in Kanawha County receive $23,625 annual salary, while magistrates in Wyoming County, who expend almost twice as many hours in the performance of their official duties, receive only $19,125 annual salary.

Such a system of compensation seems unreasonable and appears to support the petitioners' argument that the statute is unconstitutional. However, the figures regarding hours devoted to official duty submitted by the petitioners are deceiving in that they fail to recognize the distinction between hours spent "on call" and hours spent in the exercise of the magistrate's judicial function. Thus, while we agree with the proposition that equal protection requires that magistrates in the various counties will receive equal pay for equal work, the petitioners have failed in their evidentiary burden to prove such is not the case here.

Magistrates are judicial officers and the hours they spend in the performance of their official duties are hours spent in the exercise of their judicial function. The exercise of the judicial function involves the examination of facts leading to findings, the application of law to those findings, and the ascertainment of the appropriate remedy. *See generally State ex rel. Skinner v. Dostert,* 166 W.Va. 743, 278 S.E.2d 624 (1981). Time spent in the performance of judicial functions also includes time spent performing ministerial duties necessary for the exercise of the magistrates' judicial powers, as well as necessary travel and training time.

However, time spent "on call" is not time spent in the performance of a magistrate's judicial function. A magistrate who is "on call" is one who is *available for work,* not one who is actually working. And while it is true that "on call" hours constitute some infringement upon magistrates' liberty of movement for which compensation should be provided, the level of compensation is justifiably lower than for time spent on the job performing judicial duties because the intensity of work is lower.

In establishing the system by which magistrates are compensated, the Legislature apparently considered that magistrates in lesser populated counties would have a lighter case load than magistrates in more populated counties, and therefore provided a lower salary for the magistrates in the lesser populated counties to reflect the lower quantity of time they devote to performing judicial functions. The evidentiary showing made by the petitioners is insufficient to demonstrate the unreasonableness of this approach, and consequently fails to demonstrate that the population based classifications contained in W.Va.Code § 50–1–3 do not bear a rational relationship to the purpose of the statute.

Thus, while we agree with the petitioners that the classifications contained in W.Va. Code § 50–1–3, which apparently provide a lower rate of compensation for magistrates who devote more time to their duties, present the opportunity for an unequal application of the law, we must decline to strike down the statute until such time as its unconstitutionality is demonstrated by a proper evidentiary showing.

The petitioners have presented no evidence in support of their claim that the statutes establishing the rate of compensation for magistrate assistants, magistrate court clerks, and magistrate court deputy clerks are unreasonable and bear no rational relationship to the purpose of the statutes. They admit that in the case of magistrate support staff, "it would be mere speculation at trying to show a relationship between time spent on official duty and population."

The statutes governing maximum salary levels for magistrate support staff create categories for purposes of compensation based upon the number of persons served by the magistrate. *See* W.Va.Code §§ 50–1–8; 50–1–9; 50–1–9a. There are no statutory provisions establishing the time magis-

trate support staff are required to devote to official duties. We presume, however, that the time spent in the performance of official duties by magistrate assistants, clerks, and deputy clerks would, to a considerable extent, be determined by the hours kept by the magistrates whom the support staff serves, and thus would be comparable to the hours devoted to official duties by the magistrates. If the basic assumption that in lesser populated counties magistrates devote less time to performing their judicial function than magistrates in more populated counties is true, then the population based classifications established by W.Va.Code §§ 50–1–8; 50–1–9; and 50–1–9a are equally as valid as those contained in W.Va.Code § 50–1–3. Because the petitioners have presented no evidence upon which we can base a decision on this issue, we must decline the requested relief.

For the foregoing reasons, the writ of mandamus is granted to the petitioners who are magistrates, and denied to the petitioners who are magistrate court clerks, magistrate assistants, and magistrate court deputy clerks.

Writ granted in part; denied in part.